STRINGFELLOW et al. v. BRAZELTON. †

(Court of Civil Appeals of Texas. Amarillo. April 13, 1911. Rehearing Denied Jan. 20, 1912.)

1. ACKNOWLEDGMENT (§ 56*)—DEED BY MARRIED WOMAN—FRAUD.

Though the deed of a wife be properly certified by the notary taking her acknowledgment, it may be avoided by her, if the acknowledgment does not speak the truth, and was obtained by fraud, provided the grantee had notice before he paid the purchase money.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 315; Dec. Dig. § 56.*]

2. HUSBAND AND WIFE (§ 15*)—CONVEYANCE BY WIFE—DELIVERY OF DEED—VOIDNESS FOR FRAUD.

If execution of a deed by a married woman was procured by fraud, she might attack it, though it had been lawfully delivered, the same as if possession of it had been obtained and record made of it by fraud, so that, in such case, question of delivery is immaterial.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 90–99; Dec. Dig. § 15.*]

3. PRINCIPAL AND AGENT (§ 24*)—EXISTENCE OF AGENCY—QUESTION FOR JURY.

Evidence of existence of agency held sufficient to carry the question to the jury.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 722, 723; Dec. Dig. § 24.*]

4. PRINCIPAL AND AGENT (§ 22*)—EXISTENCE OF AGENCY—EVIDENCE.

Declarations of an agent are not admissible to prove agency, and should not be admitted in evidence until the relation is established prima facie by other proof.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. § 22.*]

5. PRINCIPAL AND AGENT (§§ 22, 23*)—EXISTENCE OF RELATION—EVIDENCE.

Evidence held to make a prima facie showing of agency, so that it was not error to admit testimony of agents containing statements as to their agency.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 40; Dec. Dig. §§ 22, 23.*]

6. FRAUD (§ 64*)—QUESTIONS FOR JURY.

Fraud in fact is peculiarly within the province of the jury.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 64.*]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Trespass to try title by Mrs. Ella Brazelton against Nannie T. Stringfellow and others. From a judgment for plaintiff, defendants appeal. Affirmed.

See, also, 54 Tex. Civ. App. 1, 117 S. W. 204.

Cooper, Merrill & Lumpkin, J. A. Stanford, and Graham & Dalton, for appellants. Geo. L. Mayfield and T. T. Bouldin, for appellee.

HALL, J. This is an action of trespass to try title instituted in the district court of Hale county by appellee herein, the petition being in the usual form, but containing further allegations that on or about the 18th day of July, 1907, a notary public of Hale county, who was the agent of R. L. Stringfellow and the Amarillo National Bank of Amarillo, together with the husband of appellee, fraudulently represented to appellee that a deed which she was induced to execute was only a mortgage to secure $2,000 which appellee's husband owed the Amarillo National Bank; that her husband had been charged with embezzlement, and was at the time with the sheriff, and she believed him to be in custody and under arrest, and, knowing the charges against her husband, she was excited and mentally incapacitated to transact business; that said deed was never explained to her; that she signed the same unwillingly, and told the notary so at the time; that she was never examined privily and apart from her husband; that the property in controversy was the homestead of herself and husband and her separate property; that she never delivered the deed, either to the said Stringfellow or the Amarillo National Bank, nor gave any one else authority so to do, and that, in fact, said deed was never delivered; that she never received any consideration; that the credit of $2,000 was never made on the note of $4,000 due said bank from her husband until after the institution of the suit.

Since the institution of the suit R. L. Stringfellow died testate, and Nannie T. Stringfellow, his wife, as independent executrix, made herself a party defendant to the suit, alleging that about the 18th day of July, 1907, J. M. Brazelton, husband of appellee, was indebted to the Amarillo National Bank in the sum of $4,000, and on or about said date, joined by his said wife, he executed and delivered to her husband, R. L. Stringfellow, for the use and benefit of the bank, a warranty deed, properly acknowledged, conveying to said R. L. Stringfellow the property in controversy for the consideration of $2,000; that said amount was credited on the $4,000 note; that said deed was duly executed; and that, if there was any vice in the execution of said deed or acknowledgment, neither the said R. L. Stringfellow nor the Amarillo National Bank, intervener, had any notice of same, and prayed for the title and possession of the lots for the use and benefit of the bank. The bank filed a plea of intervention, adopting the answer of Nannie T. Stringfellow, executrix. A day or two after the execution of the deed in question, J. M. Brazelton was killed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

† Writ of error denied by Supreme Court.

The case was submitted to the jury upon special issues, which, together with the answers thereto, are as follows:

"First. Was it understood by and between J. M. Brazelton and R. L. Stringfellow that the instrument executed by J. M. Brazelton and wife, Ella Brazelton, was to be a mortgage? A. No.

"Second. Was it understood by Mrs. Brazelton at the time she executed the instrument in question that the same was a mortgage or an option to secure the payment of $2,000? A. Yes.

"Third. At the time Mrs. Brazelton signed and acknowledged the instrument, did she understand that the instrument did not convey title, but only created a lien on the property in question? A. Yes. Or did she understand that it conveyed title, and that upon the payment of $2,000 by January 1st the property would be reconveyed to her? A. No.

"Fourth. Was Bern Wilson the agent of Stringfellow for the purpose of procuring a deed to the property in question when he took Mrs. Brazelton's acknowledgment to the instrument in question? A. Yes.

"Fifth. Did Bern Wilson practice any fraud or deception upon Mrs. Brazelton to induce her to sign and acknowledge the instrument? A. Yes.

"Sixth. Did he explain the instrument to Mrs. Brazelton to be a deed of conveyance at the time he took her acknowledgment? A. No.

"Seventh. Did he examine her privily and apart from her husband when he took said acknowledgment? A. No.

"Eighth. Did Mrs. Brazelton acknowledge to Bern Wilson that she had willingly signed said instrument, and that she did not wish to retract it? A. No.

"Ninth. Did Bern Wilson understand the instrument to be a deed conveying title? A. Yes.

"Tenth. Did Bern Wilson make any false statements or misrepresentations to Mrs. Brazelton at the time he took her acknowledgment which induced her to execute the instrument? A. Yes.

"Eleventh. Was the firm of Wilson, Dalton & Wilson employed by R. L. Stringfellow to secure a deed to the property in question? A. Yes.

"Twelfth. Was any member of the firm of Wilson, Dalton & Wilson employed by R. L. Stringfellow to secure a deed to the property in question? If so, which one of the firm? A. Bern Wilson.

"Thirteenth. Was said instrument delivered by Mrs. Ella Brazelton and accepted by R. L. Stringfellow before Stringfellow had notice that Mrs. Brazelton claimed said instrument not to be a deed conveying title to the property? A. No.

"Fourteenth. Was the instrument in question ever delivered to R. L. Stringfellow or the Amarillo National Bank by Mrs. Brazel- ton, or any other person authorized by her so to do? A. No."

Based upon the above findings, judgment was rendered for appellee. The case has been ably briefed by counsel for both sides.

In our opinion the controlling question in the case is raised by appellant's third assignment, in which it is insisted that the findings of the jury on special issues Nos. 4, 11, and 12 was contrary to and in the face of the undisputed evidence, and that said findings were without any evidence whatever to support them.

[1] The certificate of acknowledgment of appellee attached to the deed is in proper form. Her contention is that it does not speak the truth, because she was not examined privily and apart from her husband, that the deed itself was not explained to her by the notary, and that she notified the notary that her signature had not been willingly attached thereto. It is well settled in this state that, although the deed of the wife may be properly certified by the notary taking her acknowledgment yet it may be avoided by her if the acknowledgment does not speak the truth and the same was obtained by fraud, provided the purchaser or grantee is chargeable with notice of these facts before he pays the purchase money. Davis v. Kennedy, 58 Tex. 516; Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677; Cole v. Bammel, 62 Tex. 108; Wiley & Co. v. Prince, 21 Tex. 637; Adams v. Pardue, 36 S. W. 1015; Baxter v. Dear, 24 Tex. 17, 76 Am. Dec. 89.

[2] The question of bona fide purchaser is raised by the pleadings in the case, and we will discuss that portion of appellant's brief in connection with the assignments bearing upon the question of the delivery of the deed. If the execution of the instrument was procured by fraud, we think appellee would have the right to attack it and have it canceled as a cloud upon her title, if it had been delivered as a matter of law, the same as if manual possession of it had been obtained, and the same placed of record by the grantee wrongfully without a legal delivery having first been made to him. Holding as we do that the evidence sustains the finding of the jury that the notary was the agent of Stringfellow to procure the deed and that the deed was for the benefit of the bank, the grantee cannot be a bona fide purchaser, and the question of delivery of the deed becomes of no importance in the decision of the case.

[3] We have carefully reviewed the evidence tending to sustain the fourth, eleventh, and twelfth assignments or error, excluding all of the declarations of Dalton and Bern Wilson, which tend to establish their agency for Stringfellow, the grantee in the deed, and we believe the record to be sufficient to have authorized the court to submit said issues to the jury. A. E. Harp testified that R. L. Stringfellow had a conversation with him, several days before Brazelton was killed, and

asked the witness to drive him around by the Brazelton place; that he asked the witness what the property was worth, and told the witness in detail about the trouble he had in making Brazelton a loan, and that he was to get the property in question; that he asked the witness what he thought was its value, and told witness that Brazelton was willing to give him a deed, but that his wife (appellee) was not willing to execute it; that Dalton & Wilson were his attorneys, and were representing him in securing the property; that at his request witness drove him to the said attorney's office, and that Mr. Dalton was not in. J. A. Dillard testified that on Sunday after the execution of the deed R. L. Stringfellow told him that Dalton & Wilson were representing him in fixing up the business. Bern Wilson, the notary who took the acknowledgment, testified: "Mr. Brazelton said to Mr. Stringfellow that he would get the Bryant matter straightened out. Mr. Stringfellow said he was going away on the train and that Mr. Brazelton would not have time to get it straightened up, and that they would just leave the deeds with me, and, if Mr. Brazelton failed to get the Bryant lots straightened out, that he could just give him a deed to the three lots in controversy, and I could take the acknowledgments, or something to that effect."

[4, 5] It occurs to us that this testimony was sufficient to authorize the trial court to submit the question of the agency of the notary to the jury. The rule is that declarations of an agent are not admissible to prove agency, and they should not be admitted in evidence at all until the relation of principal and agent is established prima facie by other proof. We think the above-quoted evidence is sufficient to make a prima facie case, and hold that the further evidence upon this point of statements made by the agents L. W. Dalton and Bern Wilson, showing their agency, as testified by J. A. Dillard, R. J. Goode, and John W. Ligon, to be admissible. From this proof, the jury having found that the notary who took the acknowledgment of appellee was the agent of R. L. Stringfellow for the purpose of securing said deed and procuring the same to be acknowledged, appellants herein are bound by the infirmity, if any, existing in the instrument. The question of fraud was pointedly and fairly submitted to the jury. The evidence tending to establish that issue is not overwhelming, and, if submitted to us primarily, might not have convinced this court that it was sufficient to avoid the instrument, but the question of its sufficiency is a matter exclusively within the realm of the jury, and we will not disturb it in the present state of the record.

[6] The law has made the jurors the exclusive judges of the facts and of the weight of the evidence, and established this tribunal because it is believed that from its numbers, the mode of their selection, and the fact that jurors come from all classes of society, they are better calculated to judge motives, weigh probabilities, and take what may be called a common-sense view of a set of circumstances, involving both act and intent, than any single man. In People v. Garbutt, 17 Mich. 9, 97 Am. Dec. 162, Justice Story said: "Upon a question of fraud in fact which is made up of so many ingredients and is so peculiarly within the province of the jury, I do not hesitate to say I would be more reluctant to interfere than in many other cases. There are facts and circumstances in this case which a jury may be justified in construing as evidence of fraud, and, on the other hand, are as consistent with a theory of fair dealing. We are strongly urged by appellant to peremptorily hold that the issue of fraud and the issue of agency should not have been submitted to the jury for the want of evidence, but when we remember their physical infirmities subjected innocent women to horrible deaths when tried before judges alone, upon a charge of witchcraft, when the result might have been otherwise if tried before a jury of intelligent citizens, we prefer to let the judgment, based though it may be upon testimony not entirely satisfactory to us, rest where a sworn jury has left it."

The fact that appellants credited the consideration named in the deed upon the note upon a pre-existing debt, and the further fact that the credit was not entered by the bookkeeper of the bank until after the filing of this suit, are immaterial matters, and in no way affect the result as we view the case.

We find no reversible error in the record, and the judgment is therefore affirmed.