BURNETT et ux. v. CONTINENTAL STATE
BANK OF ALTO. (No. 1676.)

(Court of Civil Appeals of Texas. Texarkana.
Dec. 1, 1916. On Motion for Re-
hearing, Dec. 24, 1916.)

1. APPEAL AND ERROR ⊜⇒237(6) — OBJECTION
BELOW—FINDINGS—EVIDENCE.

Where no objection was made to the submis-
sion of a special issue to the jury, nor any mo-
tion made to set aside the finding thereon, the
objection that such finding was not supported by
the evidence could not be set up on appeal.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 1302½; Dec. Dig. ⊜⇒
237(6).]

2. DEEDS ⊜⇒196(4) — DURESS — BURDEN OF
PROOF.

One pleading duress in the making of a deed
has the burden of proving it.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. § 649.; Dec. Dig. ⊜⇒196(4).]

3. DEEDS ⊜⇒211(5)—DURESS—EVIDENCE.

In action to obtain possession of property
under a deed, the defense being duress in the
execution of the deed, evidence *held* to support
special finding of jury that there was no duress.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. § 646; Dec. Dig. ⊜⇒211(5).]

4. DEEDS ⊜⇒71—"DURESS."

Deception by a husband in inducing his wife
to sign a deed, by false statements as to threats
made against him by his creditors, is not duress
which he and she may set up to invalidate the
deed as against such creditors.

[Ed. Note.—For other cases, see Deeds, Cent.
Dig. §§ 26–37; Dec. Dig. ⊜⇒71.

For other definitions, see Words and Phrases,
First and Second Series, Duress.]

5. ESCROWS ⊜⇒5 — PERFORMANCE OF CONDI-
TIONS.

Where a bankrupt delivered a deed in escrow
to be delivered on condition he secured a dis-
charge and had no further trouble with his cred-
itors, the condition as to further trouble with
creditors referred to creditors then existing, and
did not relate to transactions arising after ter-
mination of the bankruptcy proceedings.

[Ed. Note.—For other cases, see Escrows, Dec.
Dig. ⊜⇒5.]

6. APPEAL AND ERROR ⊜⇒690(5) — SPECIFIC
OBJECTION.

Where bill of exceptions does not point out
any specific testimony to which definite objection
was applied, error in the admission of evidence
is not reviewable.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. § 2902; Dec. Dig. ⊜⇒690(5).]

On Motion for Rehearing.

7. HOMESTEAD ⊜⇒110 — CONVEYANCES BY
WIFE.

A married woman's deed of the homestead,
delivered in escrow, is valid where she does not
retract before the deed is delivered by the deposi-
tary; she not losing her right to retract before
that time.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. § 176; Dec. Dig. ⊜⇒110.]

8. ESCROWS ⊜⇒14(2)—WAIVER OF CONDITION.

If husband and wife, delivering their deed in
escrow to be delivered on conditions, are notified
by the depositary before delivery of the deed and
make no objection to the delivery, they thereby
waive any nonperformance of the conditions.

[Ed. Note.—For other cases, see Escrows,
Cent. Dig. § 19; Dec. Dig. ⊜⇒14(2).]

Appeal from District Court, Cherokee
County; L. D. Guinn, Judge.

Action by the Continental State Bank of
Alto, Tex., against J. M. Burnett and wife.
From judgment for plaintiff, defendants ap-
peal. Affirmed.

W. J. Townsend, Jr., of Jacksonville, for
appellants. Norman, Shook & Gibson, of
Rusk, for appellee.

HODGES, J. The appellee sued the appel-
lants, J. M. Burnett and wife, for the title
and possession of a house and lot situated
in the town of Alto, Tex. It claimed title by
virtue of two conveyances, one executed by
the appellants in May, 1914, and the other
in February, 1915. The appellants resisted
the suit upon the ground that the land was
their homestead, and that the conveyances
relied on were intended as mortgages. They
also alleged that the second deed referred to
above was, after its execution by them, placed
in escrow, with the understanding that it
was not to be delivered until Burnett re-
ceived his discharge in bankruptcy, and up-
on the further condition that he had no fur-
ther trouble with any of his creditors. In
addition to the above, it was also alleged
that Mrs. Burnett executed the second deed
under duress. It appears from the evidence
that the property in controversy had been
purchased by Burnett for a homestead, and
was being so used at the time the above con-
veyances were executed. In January, 1915,
Burnett, on account of financial embarrass-
ment, had filed a petition in bankruptcy, and
the appellee was one of his creditors. The
appellee also held as a claim against Bur-
nett a balance of approximately $550 due upon
the purchase price of the homestead, which
had previously been acquired from the hold-
er of the original purchase-money note. The
court submitted special issues, and the jury
returned the following findings of fact:
That the first conveyance, that made on May
8, 1914, was a mortgage. That the second
conveyance, the one dated February 3, 1915,
was delivered to Perkins & Perkins, attor-
neys, in escrow, to be delivered to the appel-
lee upon Burnett's discharge in bankruptcy.
That Burnett was notified by Perkins & Per-
kins previous to the delivery of the deed to
the appellee. That the property in contro-
versy was worth, on the 8th day of May,
1914, $1250. That the conveyance of Febru-
ary 3, 1915, was properly acknowledged by
Mrs. Burnett, and was not signed by her un-
der duress. That there was at the date of
the trial due upon a vendor's lien note pre-
viously executed by Burnett, including inter-
est and attorney's fees, $549.46. Upon these
findings the court rendered a judgment in
favor of the appellee.

[1-4] The first error assigned assails the
finding of the jury upon the issue of duress,
as without sufficient evidence to support it.

There was no motion to set aside this finding in the court below, nor was there any objection to the action of the court in submitting that issue. The objection here urged therefore comes too late. Blackwell v. Vaughn, 176 S. W. 912. But even if objection had been seasonably made, the state of the evidence is not such as to require a contrary finding as a matter of law. Appellants, having pleaded duress, assumed the burden of proving it. Burnett testified that prior to the execution of the deed he informed his wife that the attorney and the cashier of the appellee had told him that unless he and his wife gave the bank a good deed to the property, they would give him trouble in the federal court. He construed the intimation as meaning some form of criminal prosecution. Mrs. Burnett corroborated her husband as to what he told her prior to the execution of the deed concerning those threats. Burnett's testimony was contradicted by the cashier and appellee's attorney, both denying that any threats were made. If Burnett falsely represented to his wife that such threats had been made, and she was thereby induced to sign the deed, she was the victim of a fraud upon his part, and not of duress. Moreover, the jury was not bound to accept as true the statements of Burnett and his wife, both of whom are parties interested in the result of the suit.

[5] The next assigned error complains of the refusal of the court to submit the following special issue:

"Did the defendant J. M. Burnett have any further trouble with any of his creditors after the execution of the deed by himself and wife dated February 3, 1915? Answer this 'Yes' or 'No.' "

The relevancy of that issue must depend upon the following written agreement, which was entered into at the time of the conveyance of February 3, 1915:

"I sign this deed with the understanding that it is not to be turned over to the Continental State Bank until I am notified, and not then only on condition that we get a discharge and have no further trouble with any of the creditors. Perkins & Perkins agree to keep this deed in their possession until this contract is carried out, and also to notify me or my husband before turning over the deed."

This agreement was signed by Perkins & Perkins and by both Burnett and his wife. At the time it was executed and the deed there referred to was signed Burnett had not received his discharge in bankruptcy, but did receive it some time before the deed was finally delivered to the appellee. The "further trouble" with his creditors, which is relied on to defeat the right to the delivery of the deed, grew out of a contract between Burnett and Sanger Bros., of Dallas, after the discharge in bankruptcy. The evidence shows that Burnett had previously transferred some of his accounts to the appellee and Sanger Bros. jointly, in settlement of a part of his indebtedness due them; that aft-

er the discharge in the bankruptcy court Burnett, at the suggestion of appellee's cashier, purchased from Sanger Bros. their interest in those accounts, giving his note with personal security in payment. A dispute afterwards arose between the appellee and Burnett as to the extent of the interest in those accounts which had been owned by Sanger Bros.; and for some reason, not clearly explained, Burnett refused to pay the Sanger note when it became due. Sanger Bros. thereupon filed suit against Burnett to recover upon the note, and this suit was pending at the time of this controversy. This is the trouble which appellants rely upon to defeat their deed.

It is evident from an inspection of this collateral written agreement, in the light of the circumstances then surrounding the parties, that the "further trouble" with creditors, mentioned as a condition, referred to the creditors of Burnett then existing and whose claims were then being settled. To hold otherwise, and say that it referred to all persons who might thereafter become creditors by reason of any future business transactions with Burnett, would keep the deed in abeyance indefinitely, and practically defeat it entirely. The facts show that the "trouble" or suit by Sanger Bros., grew out of a contract made after the termination of the bankruptcy proceedings, and clearly not that species of trouble, or trouble with that particular character of creditors, which the parties had in contemplation. We, therefore, conclude that the court correctly refused to submit the issue.

[6] The remaining assignment is based upon the admission of testimony objected to upon the ground that it disclosed confidential communications between Burnett and his attorneys. The bill of exceptions does not point out any specific testimony to which a definite objection was applied, and for that reason we are unable to say that any error was committed in the admission of the evidence.

This judgment of the district court is affirmed.

### On Motion for Rehearing

The appellants contend that the evidence conclusively shows that Mrs. Burnett acted under duress when she executed the last deed to the appellee. While, as stated in the original opinion, there was a conflict in the evidence as to whether any threats were ever in fact made to Burnett, it is doubtful if his own testimony raises that issue. In describing the conditions under which Mrs. Burnett signed the deed, Burnett stated that she was sick at the time, and for an hour or more declined to sign the deed. He said:

"She refused to sign it (the deed) until this other contract was made (referring to the contract placing the deed in escrow, which was set out at length in the original opinion). * * * I wrote up the agreement for the purpose of get-

ting my wife to sign the deed, for she would not sign it until then. But the agreement was between us all."

This testimony tends strongly to indicate that Mrs. Burnett was not acting under duress at that time; that she undertook to carefully guard her rights in the property and convey it only upon the conditions stated in the written agreement. To constitute the duress here relied on the agents of the appellee must have made the threats of a criminal prosecution to which Burnett testified. The denial by those agents of having made them presented an issue for the jury, which was determined against the appellants. A deception resulting from any false statements by Burnett to his wife that such threats had been made would not affect the validity of the deed, without showing notice of the deception to the appellee. Davis v. Kennedy, 58 Tex. 516; Stringfellow v. Brazelton, 142 S. W. 937; Veeder v. Gilmer, 103 Tex. 458, 129 S. W. 595.

[7] The second assignment of error referred to in this motion was not discussed in the original opinion. Under this assignment it is contended that, inasmuch as the property in controversy was the homestead, it could not be conveyed by a deed in escrow, as was done in this instance. The proposition is thus stated in the appellants' brief: "A pretended sale of the homestead involving any condition of defeasance is void." In support of that proposition the case of Jones v. Goff, 63 Tex. 254, is cited, along with some other authorities. In Jones v. Goff an effort was made to enforce specific performance of an executory contract entered into by a married woman to convey the homestead, and it was held that such a contract was not binding upon the wife. In Warren v. Jones, 69 Tex. 465, 8 S. W. 775, and Jones v. Robbins, 74 Tex. 617, 12 S. W. 826, our Supreme Court had under consideration the validity of a deed conveying the homestead, which had been executed by an agent under power of attorney signed and acknowledged by the husband and wife. In the first case the court said:

"The power of attorney when followed by the deed of her agent is treated as the conveyance itself. In a bond for title she has to execute another instrument before the legal title passes from her. The conveyance is not fully made until she acknowledges the deed she has bound herself to execute, and this must be done in accordance with the statute. She must be allowed the privilege of retracting before the deed is made, or the statute is not fulfilled. In case of a power of attorney she has that privilege, and may withdraw her consent at any time before the deed is made by her attorney."

The case of Jones v. Goff was referred to and distinguished, the difference being that in making a bond or contract to convey title something remained to be done in the future —execution of the conveyance. To bind a married woman in advance to make a deed would deprive her of her right to retract. In this case there was no mere contract to convey the title, but the conveyance itself was executed, and nothing remained except to deliver the instrument upon the happening of the contingency the parties had in mind. If the wife executes a deed to be delivered immediately or in future, she may exercise her right of retraction until the deed is placed beyond her power to recall. But if we concede that she may retract and recall at any time before actual delivery to the grantee, she is bound by her acknowledgment unless she does retract within that time. There is no evidence in this case that Mrs. Burnett attempted to exercise any such right, or that she desired to recall the deed before its delivery to the appellee. On the contrary, there was testimony tending to show that both Burnett and his wife were notified that the deed was about to be delivered, and that they consented.

It is again urged that the court should have submitted the issue as to whether or not Burnett had any further trouble with his creditors. Counsel for appellants agree that the construction placed upon the collateral agreement signed at the time the deed was executed is correct, but contends that we erred in our conclusions from the facts. A more careful examination of the record shows, according to Burnett's own testimony, that on January 9, 1916, he filed a voluntary petition in bankruptcy, and received his discharge before the deed was delivered to the appellee. He testified that during the year 1914 he had assigned some notes and accounts to the appellee bank and to Sanger Bros. These accounts were bought from him, not from the trustee in bankruptcy. They were owned by Sanger Bros. and the bank jointly. He had been paid for them in a settlement had in 1914, before he went into bankruptcy. After he received his discharge in bankruptcy he purchased Sanger Bros.' interest in the notes and accounts, and had a controversy with the appellee bank regarding the delivery of the half which it claimed. In his cross-examination, when questioned about what trouble with his creditors he referred to in the written agreement, he said:

"I don't know just what trouble you might say that refers to, but I meant any trouble in the settling of my bankrupt estate with my creditors."

It is evident from Burnett's own testimony just referred to that he had no trouble in securing his discharge, and that the property about which the trouble arose was not part of his bankrupt estate.

[8] There is another reason why we think the court might properly have refused to submit that issue. B. B. Perkins, who held the deed in escrow, testified, in effect, that Burnett and his wife were notified and made no objection to the delivery of the deed. The court, having the right to find all facts not submitted to the jury, might have concluded that, notwithstanding there was trouble

with the creditors, that condition had been waived.

We adhere to the original disposition of this case, and the motion for a rehearing is overruled.