LYNN v. McCOY et al. (No. 8723.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 3, 1917.)

Escrows ☞8(1)—Delivery by Depositary.

Where one with whom a deed is placed in escrow delivers it in accordance with the escrow agreement, there is a valid delivery to the grantee, preventing rescission against an innocent purchaser from the grantee, notwithstanding fraud of the grantee inducing execution of deed and escrow agreement.

Appeal from District Court, Nolan County. W. W. Beall, Judge.

Suit by Hugh L. Lynn against Jasper McCoy and another. From judgment for de-

fen'dant Fred Slater, plaintiff appeals. Affirmed.

W. E. Ponder and Grisham & Grisham, all of Sweetwater, for appellant. Beall & Douthitt, of Sweetwater, for appellee.

DUNKLIN, J. Hugh L. Lynn instituted this suit against Jasper McCoy and Fred Slater to recover a section of land consisting of 640 acres. McCoy filed a disclaimer, upon which judgment was awarded in plaintiff's favor against him, but judgment was also rendered, denying the plaintiff a recovery as against Slater, and from that portion of the judgment plaintiff has appealed.

Plaintiff and his wife executed and acknowledged in statutory form two instruments in writing, one a deed to the land in controversy and the other a contract authorizing a delivery of the deed. The deed purported to be a conveyance of the land with general warranty of title to defendant McCoy for a cash consideration in the sum of $100, containing the stipulation that McCoy took the land subject to liens to secure two promissory notes then owing by Lynn, one for the principal sum of $1,000, dated May 17, 1910, bearing interest from date at the rate of 5 per cent. per annum until maturity, payable November 1, 1915, and 10 per cent. per annum thereafter; and the other note for the principal sum of $163.75, payable in installments as follows: $13.75 November 1, 1910, and five installments of $30 each, payable, respectively, on November 1st of each year, beginning with 1911 and ending 1915. The deed further stipulated that the grantee took said land subject to all back taxes due thereon. Both of those notes were payable to the Middlesex Banking Company of Middleton, Conn.

The written contract recited that plaintiff and his wife were the owners of the land; that they were indebted to the Middlesex Banking Company in approximately the sum of $1,700, which was secured by deed of trust on the land; that the taxes upon the land had not been paid for the preceding two years, and that the same aggregated approximately $200, which also constituted an incumbrance upon the land. The contract further recited that McCoy had agreed to purchase the land from plaintiff and wife and to pay them the sum of $100, and take the land subject to the liens mentioned, provided they owned a good and merchantable title. The contract further recited that Lynn and wife had agreed to accept $100 for their interest in the land, and had executed their warranty deed to McCoy, conveying the same to him. It further contained the following stipulation:

"It is therefore agreed by and between the said Hugh L. Lynn and Lizzie Lynn, parties of the first part, and the said Jasper McCoy, party of the second part, that said warranty deed above mentioned is to be placed in escrow in the First National Bank of Hamlin, Texas, to be held by said bank and delivered to said Jasper McCoy after he has had a reasonable time to have the title to said land examined not to exceed thirty days from this date, upon the payment to said bank for the said Hugh L. Lynn and Lizzie Lynn of the sum of $100.00. Provided that should the said Jasper McCoy not deposit in said bank within said thirty days for the said Hugh L. Lynn and Lizzie Lynn the said sum of $100.00 then said deed is to be delivered to the said Hugh L. Lynn.

"It is further provided that should the title to said land be good and merchantable in said Hugh L. Lynn and Lizzie Lynn, subject only to the above-mentioned indebtedness, then the said Jasper McCoy obligates and binds himself to pay said sum of money above mentioned to said bank above mentioned for the said Hugh L. Lynn and Lizzie Lynn. But if said title shows to be further incumbered than above set out then the said McCoy is under no obligations to accept said deed and pay said sum of money."

Those instruments were both dated February 3, 1916, were acknowledged on the same date, and as soon as they were executed they were deposited in the First National Bank of Hamlin, where they remained until they were delivered to McCoy by the bank, which delivery was within the 30 days from the date of their execution. At the time they were delivered to McCoy he paid to the bank for the use and benefit of plaintiff and wife $100, as stipulated in the contract and deed. Very soon after McCoy received the deed it was duly filed for record, and shortly thereafter he sold the land to Slater; the deed to Slater being dated March 4, 1916, on which date that deed was also duly filed for record. The deed from McCoy to Slater recited a cash consideration paid to McCoy of $2,000.

The deed and contract executed by plaintiff and wife were filed with plaintiff's petition as exhibits thereto, and the petition contains three counts: The first is in the statutory form of an action in trespass to try title. In the second count it was alleged, in substance, that on February 3, 1916, plaintiff owned a fee-simple title to the land, and was lawfully possessed thereof, and at that time the defendant McCoy was using the same as his tenant; that on said date McCoy came to plaintiff's residence, having those instruments in his possession, which had been prepared under his direction and without the knowledge or advice of the plaintiff and his wife, both of said instruments being unsigned, but prepared for the signatures of the plaintiff and his wife; that McCoy proposed that plaintiff and his wife execute and acknowledge said instruments, and, as an inducement for them to do so, represented to them that the incumbrance against the land in favor of the Middlesex Banking Company then amounted to approximately $2,200, and that the land would be sold on the following day by 2 o'clock p. m., unless the debt was paid, or the payment thereof extended, but that if plaintiff and his wife would sign those instruments he,

McCoy, would advance money, which he then had, necessary to postpone said sale, and would allow plaintiff a period of 30 days within which to get the money necessary to discharge said indebtedness, and would aid plaintiff in procuring the same; that McCoy further represented that the deed and contract would be placed in the First National Bank of Hamlin and there kept without delivery of the deed to McCoy for the full period of 30 days, in order to give plaintiff an opportunity to pay off said debt, or to sell the land to some one else, and in the event he should do either, the deeds should not be delivered by the bank to McCoy, but if plaintiff failed to procure the money, either by borrowing it, or by selling the land, within the period of 30 days, then, and not until then, the deed should be delivered to McCoy upon the payment to plaintiffs of $100 for their equity in the land, and should also pay the outstanding indebtedness against it, which was then estimated to be the sum of $2,200.

It was further alleged that McCoy represented to the plaintiff and his wife that the proposed parol agreement between the parties recited above was embodied in the written contract, and that plaintiff and his wife executed the same and the deed relying upon such statement, in ignorance of the fact that the same was false, and would not have executed it but for such assurances.

It was further alleged that plaintiff was unable to read, and that the instruments were not read over to him; that McCoy had been acting as plaintiff's agent in caring for the land and plaintiff's stock, and had his full confidence. It was further alleged that within 30 days from the date of the execution of said instrument, plaintiff negotiated a sale of the land to other persons, which would have enabled him to discharge the incumbrance against the land, and he would have done so but for the wrongful refusal of the defendant McCoy to permit him to do so, unless plaintiff would pay him the sum of $500 for his services in securing a postponement of the foreclosure of the mortgage indebtedness; that thereupon plaintiff, in order to avoid a lawsuit, agreed to pay the amount so demanded, but his offer so to do was refused by McCoy, who then within the 30-day period above mentioned, and about the 26th day of February, 1916, attempted to place the sum of $100 to plaintiff's credit in the First National Bank of Hamlin, and upon so doing obtained possession of the deed, and attempted to convey the land to the defendant Slater, who is now claiming the property under such conveyance, but that plaintiff had never received from the bank the money so deposited for his benefit.

It was further alleged that the representation by McCoy, at the time the instruments were executed, of the amount of indebtedness outstanding against the land, was grossly exaggerated; that the amount then due was less than $1,400; that the further representations that the land was then about to be sold, and would be sold on the following day under a foreclosure of said lien, and that McCoy had secured the money necessary to procure a postponement of such foreclosure, were all false, and were made by McCoy for the fraudulent purpose of deceiving plaintiff and thereby to induce the execution of the deed and contract, and that plaintiff and his wife executed said instruments relying upon the truth of the representations so fraudulently made by McCoy.

It was further alleged that by reason of the fraud so practiced upon plaintiff and his wife by McCoy there had been no legal delivery of the deed to him, and therefore the deed never became effective in favor of either McCoy or the defendant Slater.

The third count of the plaintiff's petition contains the same allegations of fraud as are contained in the second count, with the same history of the transactions between the parties, and upon those allegations, plaintiff prayed for a cancellation of the deed from himself and wife to McCoy, and the deed from McCoy to Slater; it being alleged in that connection that at the time Slater took his deed from McCoy he had actual knowledge of the fraud so practiced by McCoy upon plaintiff, or by the exercise of ordinary care should have acquired such knowledge.

Upon the trial, plaintiff introduced evidence tending, in a material respect, to sustain his allegations of fraudulent misrepresentations by McCoy, and which induced the execution of the deed and contract in favor of McCoy, and such evidence was perhaps sufficient, if believed by the jury, to sustain a judgment in plaintiff's favor on the third count in his petition, canceling the deed to McCoy, and also the deed from McCoy to Slater, unless such relief could be avoided by Slater under the plea filed by him that he was an innocent purchaser of the land from McCoy without notice of such fraud. Plaintiff also introduced in evidence the deed and contract executed by himself and wife in favor of McCoy, and also the deed from McCoy to Slater conveying the land in controversy, all of which instruments were introduced for the sole purpose, expressed at the time, of showing common source of title. Upon the introduction of such testimony and written instruments the plaintiff rested. Thereupon the defendant Slater announced to the court that he would introduce no evidence, and upon that announcement the introduction of testimony on the entire case was closed; and upon the evidence adduced the court gave to the jury a peremptory instruction to return a verdict in plaintiff's favor against McCoy on his disclaimer of title, but in favor of the defend-

ant Slater, which was done, and judgment was entered accordingly.

At the outset of appellant's brief there is a statement of the three counts in the petition filed by him in the trial court, and following that statement is this:

"Upon the trial plaintiff elected to rely on the first and second counts of his petition, and abandoned the third count. The case of appellant rests in the single question whether or not there was a delivery of the deed to the land from appellant to the defendant McCoy under the facts adduced."

By his first assignment, appellant insists that there was evidence sufficient to show that the delivery of the deed from himself and wife to McCoy was obtained through fraud, which would render the same void both against McCoy and Slater, and that the court erred in taking that issue from the jury. By the second and last assignment of error appellant insists that the verdict in Slater's favor was contrary to law and unsupported by the testimony because: (1) The evidence showed that the delivery of the deed from plaintiff and wife to McCoy was founded in fraud and without authority on the part of plaintiff and his wife, and said deed was therefore void as against both McCoy and Slater; (2) there was no evidence that Slater was an innocent purchaser for value and without notice of the fraud practiced by his vendee, McCoy; (3) that there was no testimony to show that Slater purchased the land, or that his vendor McCoy ever purchased it in view of the fact that the deeds from plaintiff to McCoy and from McCoy to Slater were introduced by the plaintiff for the sole purpose of showing common source of title. But the only proposition offered under both assignments is one presenting the single contention that the evidence showed conclusively that there was no lawful delivery of the deed from plaintiff and his wife to McCoy, thereby limiting both assignments to that single proposition, which, therefore, as stated in the outset of appellant's brief, is the only question for our determination. In Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S. W. 823, the following was said by Justice Gaines:

"It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance. It follows from these first principles that an instrument which passes into the possession of the grantee, without such intention on part of the grantor, is wholly inoperative; and that a purchaser from the former acquires in law no title to the property which it purports to convey. It is accordingly held that even a vendee from the grantee, who has paid value without knowledge of the facts, is not an innocent purchaser in such a case" (citing cases).

Many authorities might be cited to the same effect, such as Boswell v. Pannell, 146

S. W. 236; Id., 107 Tex. 433, 180 S. W. 593; Spotts v. Whitaker, 157 S. W. 422; Walker v. Erwin, 47 Tex. Civ. App. 637, 106 S. W. 165; Devlin on Deeds, § 322.

According to the testimony of plaintiff, himself, the parol agreement between himself and wife and McCoy was that the deed should be placed in escrow in the First National Bank of Hamlin, and should be thereafter delivered to McCoy upon the payment by the latter of the sum of $100, and the assumption of outstanding indebtedness against the land, in the event only that plaintiff should be unable to discharge the incumbrance by a sale of the land, or by borrowing the money from other sources. The written contract between himself and McCoy also shows a specific agreement that the deed should be placed in escrow, but upon conditions differing from the alleged parol agreement as testified to by plaintiff. No evidence was introduced to show, and it is not contended by appellant here, that any fraud was practiced by McCoy in order to obtain possession of the deed from the bank after it had been deposited in escrow, but the sole contention is that the fraud which appellant insists invalidated the delivery of the deed to McCoy by the bank was the fraud practiced in the inception of the negotiations between plaintiff and McCoy, and which induced plaintiff and his wife to execute the deed and contract and place those instruments in escrow with the bank.

Plaintiff having abandoned his suit for a rescission and cancellation of the deed to McCoy, the fraud alleged can be looked to for no other purpose except to determine whether or not the delivery of the deed, which had already been executed and acknowledged, to McCoy by the bank vested the legal title in McCoy. As noted already, the written contract, which was deposited with the bank at the time the deed was deposited, expressly authorized the bank to deliver the deed to McCoy, if he should, within 30 days from the date of the instrument, pay the bank for plaintiff's use the sum of $100. Plaintiff gave no notice to the bank of any intention to revoke the authority to so deliver the deed, nor did he give the bank any notice of the alleged fraud on the part of McCoy, which induced the execution of the deed and contract. In the absence of a rightful rescission of the written contract, McCoy had the right to insist upon a delivery of the deed in accordance with the terms of the contract, and if he complied with his obligations therein expressed, equity would have enforced a delivery of the deed, upon the theory that the equitable title had already vested in him, notwithstanding the nondelivery of the deed. In 10 R. C. L. bottom page 628, the following is said:

"The deposit of a deed in escrow creates, however, in the grantee such an equitable interest in the property, as that, upon full performance of the conditions according to the es-

crow agreement, the title will vest at once in him."

To the same effect is 1 Devlin on Deeds, § 327. See, also, Moore v. Trott, 156 Cal. 353, 104 Pac. 579, 134 Am. St. Rep. 131; Wilkins v. Somerville, 80 Vt. 48, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 Am. St. Rep. 906, and notes.

Even though it could be said that proof of the alleged fraud on the part of McCoy would warrant a rescission of the written contract deposited with the bank, the facts so proven would not, ipso facto, work a revocation of, the authority expressly given to the bank by the written contract to deliver the deed to McCoy within the 30-day period from its date upon payment to the bank for plaintiff's use of the sum of $100; and in the absence of some proof of fraud on the part of the bank in delivering the deed to McCoy, or some fraud practiced by McCoy upon the bank in order to procure a delivery of the deed by the bank, the authority given to the bank by the written contract to deliver the deed continued in full legal force and effect, and the delivery made in pursuance thereof vested the legal title in McCoy with power to convey to Slater.

If, as contended by appellant, the alleged fraud by McCoy, which induced the execution of the instruments, would render void the subsequent delivery thereof by the bank, notwithstanding such delivery was made in pursuance of the authority given to the bank by plaintiff and his wife, then it would follow that every deed procured by fraud would be void as against an innocent purchaser. If a vendee sells property and delivers, or authorizes a delivery of, a conveyance thereto, he thereby voluntarily conveys the legal title to the vendee, and the deed will be given that effect, even though he may have equitable grounds for a cancellation of the instrument on the ground of fraud, accident, or mistake inducing the execution of the deed and voluntary delivery, but he cannot assert such right of rescission against an innocent subsequent purchaser of such legal title from his vendee. But that rule is predicated upon the fact that the vendor has in fact voluntarily conveyed the legal title to the vendee, and thereby vested him with authority to sell the property to another. If, however, the vendor executes the deed and does not deliver it, or authorize its delivery, then the legal title never vests in the vendee named in the instrument, but the instrument is a nullity, having no more effect than if it were a forgery, and therefore will not furnish a predicate for a plea of innocent purchaser from the vendee named in such instrument.

For the reasons stated, we overrule appellant's contention that there was no lawful delivery of the deed to McCoy, and that therefore the legal title to the land in controversy never vested in him.

Accordingly, the judgment of the trial court in favor of defendant Slater is affirmed, and the judgment in favor of plaintiff against the defendant McCoy, of which no complaint is made, is undisturbed as to McCoy.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.