### NEAL et al. v. PICKETT. (No. 764–4363.)

(Commission of Appeals of Texas, Section A. Feb. 17, 1926.)

**1. Deeds ⬤⟳51—Estoppel ⬤⟳19.**

Forged deed being void ab initio affords no ground for implications, supplementary consent, waiver, or estoppel to give deed effect.

**2. Escrows ⬤⟳8(1).**

Escrowed deed exhibits an agreement having some effect from beginning and originally vests equitable title in grantee.

**3. Escrows ⬤⟳9.**

Contingency of depositary's delivery of deed in escrow may, according to real intent as disclosed by circumstances, be condition subsequent rather than precedent.

**4. Escrows ⬤⟳14(1)—Depository's decision to deliver deed in escrow may prevent delivery from being wholly without effect, though he may have been mistaken in the event.**

Depositary of deed in escrow has power to decide in first instance whether contingency has

occurred, and his decision may prevent delivery from being wholly without effect, though he may have been mistaken in the event.

**5. Escrows ⬳14(2).**

Escrowing grantor or his privies may, by waiving strict performance or nonperformance of pre-existing condition, make delivery by depositary effectual.

**6. Executors and administrators ⬳75.**

Independent executor *held* to have authority to represent decedent's heirs in directing delivery by depositary of deed deposited in escrow by decedent.

**7. Escrows ⬳14(1)—As respects claim of unlawful delivery by depositary of escrowed deed, delivery after notice to those adversely interested, who made investigation and thereafter directed delivery, held to pass legal title.**

Delivery by depositary of escrowed deed after notice to those adversely interested, who made investigation to see if condition, requiring machinery necessary for boring for oil to be placed on land and work to be commenced within six months, had been performed and thereafter directed delivery, *held* to pass legal title subject only to suit seasonably brought attacking validity of deed.

**8. Adverse possession ⬳71(2)—Statute limiting action for recovery of real estate to three years, where party in possession is claiming under color of title, does not bar action if purported title was acquired by fraud (Rev. St. 1925, arts. 5507, 5508).**

Rev. St. 1925, arts. 5507 and 5508, limiting action for recovery of real estate to three years, where party in possession is claiming under color of title, does not bar action if purported title was acquired by fraud.

**9. Adverse possession ⬳71(1) — Statutory function of deed under statute limiting action for recovery of real estate in certain cases to five years, if party in possession is claiming under deed duly registered, has no relation to real title, but is to give notice of adverse claim (Rev. St. 1925, art. 5509).**

Statutory function of deed under Rev. St. 1925, art. 5509, limiting action for recovery of real estate in certain cases to five years, if party in possession is claiming under deed duly registered, has no relation to real title, but is merely to give notice of adverse claim.

**10. Adverse possession ⬳71(2).**

Void deed, if duly registered, is sufficient under Rev. St. 1925, art. 5509, to give notice of adverse claim unless forged or void on its face.

**11. Adverse possession ⬳71(2).**

Deed duly registered may be effective to give notice of adverse claim under Rev. St. 1925, art. 5509, though procured by fraud.

**12. Adverse possession ⬳71(2)—Escrow deed appearing on its face to be valid, delivered by depositary to grantee and duly registered, held to give notice under five-year statute of limitation of adverse claim (Rev. St. 1925, art. 5509).**

Escrow deed appearing on its face to be valid, delivered by depositary to grantee and duly registered, *held* sufficient under Rev. St. 1925, art. 5509, limiting action for recovery of real estate in certain cases to five years, where party in possession is claiming under deed duly registered, to give notice of adverse claim.

**13. Adverse possession ⬳68—Fact that occupier claims under deed or other muniment of title does not affect operation of law, except where more than 160 acres is involved (Rev. St. 1925, art. 5510).**

Though trespasser may acquire title under Rev. St. 1925, art. 5510, limiting action in certain cases to 10 years, that he may claim rights under a deed or other muniment of title does not affect operation of law except where more than 160 acres is involved.

**14. Adverse possession ⬳114(1)—Evidence of adverse possession held to show existence of conditions essential to prescribe under 10-year statute of limitation (Rev. St. 1925, art. 5510).**

Evidence that parties in possession of land had held continuous, peaceable, exclusive, and adverse possession and paid taxes thereon for more than 10 years immediately antecedent filing of suit, *held* to show existence of conditions essential to prove title under Rev. St. 1925, art. 5510.

**15. Limitation of actions ⬳13, 100(11).**

One claiming suspended operation of statutes of limitation or estoppel against their effect must have exercised due care.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Mrs. Jennie B. Pickett against T. V. Neal and others. The Court of Civil Appeals (269 S. W. 160) affirmed the judgment of the district court for plaintiff, and defendants bring error. Judgments of both the Civil Appeals and district courts reversed and cause remanded.

Haltom & Haltom, of San Antonio, for plaintiffs in error.

L. B. Wiseman, of Floresville, and Dibrell & Mosheim, of Seguin, for defendant in error.

NICKELS, J. The judgment of the district court includes findings (supported by evidence) that plaintiffs in error, and those under whom they claim, had and held continuous, peaceable, exclusive, and adverse possession of the land in controversy, and paid taxes thereon, for a period of more than 10 years immediately antecedent filing of the suit. Those findings have not been complained of or challenged by any party to the suit, nor does anything in the opinion of the honorable Court of Civil Appeals (269 S. W. 160) have different import. The deed of February 17, 1906, under which title and right to possession is claimed, was duly registered August 24, 1906, and the suit was filed December 26, 1919.

The apparent title and rights thus ac-

quired were dissolved by the district court, and that dissolution was approved by the Court of Civil Appeals, upon these grounds: (a) There was no delivery of the deed; hence its effect, rather noneffect, is exactly comparable to that of a forged deed. (b) Possession under a forged deed is not "under title or color of title" within the meaning of the three-year statute (articles 5507, 5508, R. S. 1925); nor (c) under a "deed or deeds duly registered" within the meaning of the five-year statute (article 5509, Id.). (d) Operation of the ten-year statute (article 5510, Id.) is precluded by claim of title, etc., under such a deed. And (e) assertion of limitation title, or of the statutes of three, four, five, or ten years' limitation is precluded through estoppel. The rights of the parties are rightly determinable by the principles of law involved in this statement of the bases of the judgment as applied to the facts.

[1-5] The comparability of an escrowed deed, finally delivered by the holder prior to performance of the named conditions, and a forged deed, rests, of course, upon nonintent of the grantor or those in his stead. This at once suggests that the absolute lack of effect may not, inexorably, be the same in the one case as in the other. Forgery presents an instance where the owner of the land, or his privies, are wholly absent, and the noneffect is lacking ab initio; there is no possible ground for implications, supplementary. consent, waiver, estoppel, etc., to supply operative force. An escrow, contrarily, exhibits an agreement having some effect from the beginning and originally vesting a species of equitable title in the grantee. Lynn v. McCoy (Tex. Civ. App.) 200 S. W. 885; 21 C. J. pp. 882–883. The contingency of the depositary's delivery may, according to the real intent as disclosed by circumstances, be a condition subsequent rather than precedent. Manton v. San Antonio (Tex. Civ. App.) 207 S. W. 951. Ex necessitate, in many cases, the depositary must judge, and has the power to decide in the first instance, whether the contingency has occurred, and his decision (included in the delivery) may prevent the delivery from being wholly without effect even though he may have been mistaken as to the event. Fred v. Fred (N. J. Ch.) 50 A. 776; 21 C. J. pp. 878, 879. And so long as contractual right and capacity exists, the escrowing grantor, or his privies, may waive strict performance or nonperformance of the preexistent condition and thus make the delivery as effectual as if the condition had not been prescribed. Burnett v. Continental State Bank (Tex. Civ. App.) 191 S. W. 172, 174. We do not mean to challenge, in any wise, the abstract and general proposition that an escrowed deed, transmitted by the depositary without performance of the named conditions by the grantee, does not operate to convey the legal title. Fire Ins. Co. v. Stockstill (Tex. Civ. App.) 197 S. W. 1036, and cases there cited; Blue v. Conner (Tex. Civ. App.) 219 S. W. 534; Lynn v. McCoy, supra; 21 C. J. pp. 880, 883; 16 Cyc. p. 579; Fearing v. Clark, 16 Gray (Mass.) 76, 77 Am. Dec. 394; Provident Life & Trust Co. v. Mercer County, 18 S. Ct. 788, 170 U. S. 593, 42 L. Ed. 1156; Wilkins v. Somerville, 66 A. 893, 80 Vt. 48, 11 L. R. A. (N. S.) 1183, 130 Am. St. Rep. 906, and note page 910 et seq. But we do mean to say that (as is true of all general rules) there are many exceptional cases where it cannot properly apply. In the case of a forgery, the deed is wholly void—it is no deed at all and no possibility of delivery. In respect to an escrow contract, and its consequences, the delivery may be wholly void, or it may be voidable only, or it may have complete obligatory force although the conditions, as stipulated, may not have been performed; the actualities, and not the abstract principle, exerting superior force.

There is here a finding by the jury of relation to the escrow and delivery, but not of controlling effect. In response to the first special issue submitted to it, the jury answered that Lewis & Ellerd "failed to place on any part of 26½ acres of land described in the contract the machinery necessary for boring for oil, * * * and that within said six months work on said well was not begun as provided for in said contract." This finding, of course, establishes actual nonperformance of the escrow conditions, and if it stood alone, under the general rule mentioned, the entire lack of force in the delivery would be a resultant. Measured by the original contract itself, the sole condition of final delivery was that whose nonexistence is thus established. The finding, however, does not mean that some machinery, etc., was not placed on the land, or that some work was not begun, within the six months' period, and the record, without dispute, shows that some machinery, or tools, were thus placed and some work was done. The testimony of Ellerd, McCullough, and Lewis is to the effect that the derrick had been built and machinery installed, etc., and work commenced within the period; the dispute of their testimony is to be found in that of Jonathan Pickett, one of the defendants in error, and he testified to the existence of some tools and some work there within the period. The dispute is as to the extent, and not as to the existence, of the work and machinery. We mention this, not because we have any concern with the weight of the testimony or in finding facts on conflicting evidence, but for the purpose of showing that, at the time of the delivery of the deed, there did exist visible evidence of some effort to comply with the condition named. Whether the effort was sufficient, or not, was the thing of which Mr. Brown (the depositary), and those who caused him to make delivery, had to judge at the time. The evidences of the effort, whatever it may have been, existed on the

ground in a manner such as plainly to show to those interested just what had been done. A. J. Pickett, the grantor, had died in the meantime, but his independent executor, di privies, and all interested, were in a position to know, or to ascertain through exertion of the slightest effort, exactly what had been done by Ellerd & Lewis or what had been omitted by them.

[6] The tract of land was situate within 800 yards of the courthouse at Floresville and within a few hundred yards of the residences of all the defendants in error, and at all times was open to their observation. At least one of them (Jonathan Pickett), who manifested great interest at the time, was on and across the tract every day for a long time immediately before the delivery and afterward. The case is not one where the depositary, without notice to the grantor or his privies, judged the matter of performance, vel non, and made delivery, or where in making the delivery he acted as agent of the grantee. On the contrary, the petition avers, Mr. Brown (the depositary), Mr. Murray (the independent executor), and Mr. Ballard (as "agent and attorney of plaintiffs") represented all of the defendants in error in making the delivery. Mr. Ballard, personally, had a substantial interest in the matter and recovered five acres of the tract on that interest, and represented himself, also, in the delivery. Mr. Murray had authority to represent all of them except Ballard by reason of his independent executorship (Roy v. Whitaker, 48 S. W. 892, 49 S. W. 367, 92 Tex. 346, 355); but if that status had not given the authority, the averment of his authority of representation is conclusive here. And there is no warrant for an idea that there was lack of ability or experience in the representation of any of the defendants in error. Mr. Ballard was a lawyer of ripe experience; Mr. Murray was state senator; Mr. Brown was cashier of the local bank. Nor is there basis for a thought that, for lack of ability, etc., any of the defendants in error were circumstanced to their disadvantage. There was not, and could not have been, any concealment, or prevention, of means of information; as stated, whether any machinery, tools, etc., had been placed upon the land, and whether any work had been done upon the well, and the extent thereof, were matters demonstrable by visible and tangible evidences on the ground and whose observation was equally open and available to all parties at interest. As stated, the dispute is not about the total absence, vel non, of work or machinery, but about the extent thereof. And whatever the facts were, the defendants in error, at the time, knew them, or could have ascertained them by the exertion of the slightest effort. That was the situation when the question of delivery of the deed by the depositary arose. Ellerd demanded the deed, saying that Lewis & Ellerd had complied with the terms of the contract.

Mr. Brown would not deliver except upon direction and consent of Mr. Murray, the independent executor. Mr. Murray, having learned of Ballard's interest, would not direct, or consent to, delivery without first conferring with him; they conferred and investigated "the matter" for two or three days and then directed, or caused, Mr. Brown to make the delivery.

The nature of the actual investigation made by Mr. Murray et al. is not shown, but a reasonable one would have disclosed the facts, especially since Ellerd's statement mainly was one of opinion upon which he was predicating the right to the deed, and since the other parties took some time to satisfy themselves whether his claim was right or wrong. Moreover, in view of the independent "investigation," reliance upon whatever Ellerd may have said is not shown. This is indicated by the fact of the "investigation" by Mr. Murray and Mr. Ballard. Mr. Brown did not testify. Mr. Ballard testified, but said he could not recall whether he went down to the tract of land or not, and:

"As to what Ellerd said to me at the time the deed and contract were delivered, about having complied with his contract, I can't say that I remember that he said anything about that; if he did, I don't remember anything about it. I hesitated those to him, my recollection is, because he had failed in the contract, but I can't remember whether he said he had complied with the contract or not at that time. * * * Don't remember what Ellerd said about having complied with his contract or not having complied with it; it looks to me like if he had complied with it there wouldn't 'have been any hesitation about turning over the papers. That is so long ago, these things have escaped my mind."

Mr. Murray's statement about reliance is summarized in these excerpts from his testimony:

"I think I relied upon Ellerd's statement more than anything else, that the contract had been complied with." "We relied mostly on Mr. Ellerd."

It is proper, here, to say that Ellerd is alleged to have made false and fraudulent promises as to what he (or Lewis & Ellerd) would do in the future about thoroughly testing the land for oil or gas, and that this allegation has support in the evidence and findings. But this "fraud" has no relation to the conditions of delivery named in the escrow contract, and on the question of whether the actual delivery was wholly without effect it may, properly, be laid to one side.

Whatever the extent of the work done and appliances established theretofore, Lewis & Ellerd shortly subsequent to delivery of the deed, and at an expense of more than $5,000, drilled a well on the land to a depth of 600 or 700 feet. This was done without objection from any of the parties; in truth, it was done with their knowledge, acquiescence,

and encouragement. Thereafter, for many years, Lewis & Ellerd kept a man employed and in actual possession and custody of the land. They also fenced the tract. To none of these acts, etc., was there any objection, and no effort was made to prevent them. The so-called "escrow contract" contained stipulations in addition to the matter of the deed and its delivery. Amongst those stipulations is one giving the grantor the privilege of designating the location for a second well and of requiring its drilling, upon condition that the grantor pay one-half the cost. When the first well had been sunk to the depth indicated, trouble (in the physical operation) was encountered of such a nature as to cause abandonment of further drilling in it. Thereupon, Ellerd (for Lewis & Ellerd) took up with Mr. Murray, as executor, the question of the stipulation about the second well, and requested a "release" from that obligation, and the "release" was given. Thus some effect for the deed and its delivery was recognized.

[7] The delivery was made after precedent notice to those adversely interested; they had means of ascertaining whether the prescribed conditions had been fulfilled; they made investigation, and directed and consented to the delivery. In its delivery, and in the grantees' conduct under it, they subsequently acquiesced. The delivery was not, therefore, without effect; it passed the legal title. Burnett v. Continental State Bank, supra; Manton v. San Antonio, supra. The deed, thus delivered, was not void in the absolute sense, or otherwise comparable with a forged deed. It may have been voidable at the suit of those at interest seasonably brought, but absent that attack it presented all the elements of a deed and record title.

[8] If "color of title," as the term is used in the three-year statute (articles 5507, 5508), had the signification attributed to it by many courts (e. g. Wright v. Mattison, 18 How. 55, 15 L. Ed. 280), that is, "that which in appearance is title, but which in reality is no title," the conclusions already stated would result in a holding of the sufficiency of the deed to support title by three-year possession under it, for, "in reality," "it is some title." But the term as used by the Legislature is of narrower meaning; lack of "intrinsic fairness and honesty" excludes the "title" or "color of title" there mentioned. Marsh v. Weir, 21 Tex. 97; Hussey v. Moser, 7 S. W. 606, 70 Tex. 42. Fraud in its procuration discolors the title in an "intrinsically unfair and dishonest" way within the terms of this statute. Hussey v. Moser, supra; Snowden v. Rush, 6 S. W. 767, 770, 69 Tex. 593. Because of this, and on the record and the findings, it must be held that there was no acquest of title by plaintiffs in error or their predecessors in virtue of the three-year period of limitation—not because the deed is comparable, in

noneffect, to a forged title paper, but because of lack of "intrinsic fairness and honesty" otherwise.

[9-12] But a different result is accomplished by the five-year statute (article 5509) in its application to the facts. The apparent muniment of title there spoken of is "a deed or deeds duly registered." The statutory function of such "a deed or deeds" has no relation to the real title; it is merely to give notice "of the adverse claim to the land" and, thus, to aid "possession." Roseborough v. Cook, 194 S. W. 131, 108 Tex. 364. A void deed, if "duly registered," is as competent to import notice as is a valid one; hence, a void deed is sufficient (with exceptions to be noted) to satisfy the statutory requirement (Davis v. Howe [Tex. Com. App.] 213 S. W. 609, 610, 611, and cases there cited), and there can be no ground whatever to support a contention that a deed, such as this, which at most is merely voidable, is insufficient. So, fraud alone cannot prevent the accrual of the statutory bar. Reynolds v. Lansford, 16 Tex. 286; Hudson v. Wheeler, 34 Tex. 356; Kuhlman v. Baker, 50 Tex. 630; Connoly v. Hammond, 58 Tex. 11; Davis v. Howe, supra. The exceptions referred to are: (a) A deed which is void because it was forged, that exception being directly provided for in the statute itself. See Snowden v. Rush, supra. (b) If a "deed" be void on its face, it is not a deed at all within the meaning of the law. Schleicher, Adm., v. Gatlin, 20 S. W. 120, 85 Tex. 270-274, and cases there cited. Such an instrument, plainly, could not give that notice which is the basis of the law of prescription. The deed in question (for reasons above stated) cannot be analogized to a forged instrument so as to make the first mentioned exception available; and there is no basis for applying the second exception, since the deed is fair upon its face and voidable only (if at all) because of extrinsics.

[13, 14] "The title by limitation ripens, primarily, only because, in such manner and for such period of time as the different statutes require, notice is given of the hostile claim": (a) "Under the three years' statute, it is afforded by possession under title or color of title"; (b) under the five years' statute, it is given by possession, the payment of taxes, and the registration of a naked deed"; (c) "under the ten years' statute, simply by possession." Roseborough v. Cook, supra. It is true, of course, that a naked trespasser may acquire title under the ten years' statute, but the fact that the occupier may claim rights under a deed, or other muniment of title, also does not affect the operation of the law, except in cases where more than 160 acres of land is involved. Moses v. Dibrell, 21 S. W. 414, 2 Tex. Civ. App. 457; Hardin v. Clark, 21 S. W. 977, 1 Tex. Civ. App. 565; Doom v. Taylor, 79 S. W. 1088, 35 Tex. Civ. App. 251; Simpson Bank v. Smith, 114 S. W. 446, 52

Tex. Civ. App. 349; Cantagrel v. Von Lupin, 58 Tex. 570; Taliaferro v. Butler, 14 S. W. 191, 77 Tex. 578; Kobs v. N. Y. & T. Land Co. (Tex. Civ. App.) 63 S. W. 1087; Ellis v. LeBow, 74 S. W. 528, 96 Tex. 532. The record exhibits existence of the conditions essential to Neal's and Snody's right to prescribe under the ten years' statute as well as under the five.

The assignments of error based upon rulings by the trial court and the honorable Court of Civil Appeals contrary to what has been stated above must, therefore, be sustained.

[15] The rulings that plaintiffs in error are estopped to plead (or claim title by) prescription were erroneous, also, at least as to some of the defendants in error. The bases of that estoppel, so far as there is any evidence to furnish them, are that Ellerd, from time to time, after the delivery of the deed promised and represented that he (or Lewis & Ellerd) intended to and would more thoroughly test the land for oil or gas if (some of) the defendants in error would be patient and not sue. So far as the record shows, such representations were not made or communicated to, or relied upon by, some of the defendants in error—namely, Murray, Ballard, the Davenports, Elsie Pickett, Helen Avis Pickett, and Mary Vance Pickett. We seriously doubt the sufficiency of the averments, or of the proof, to present an issue of estoppel even in favor of Mrs. Pickett and Jonathan Pickett, for one claiming suspended operation of the statutes of limitation, or estoppel against their apparent effect, must have not ignored the requirements of due care and blindly relied upon a situation as being what it seemed rather than as being what it in reality was. First State Bank of Bangs v. Visart (Tex. Civ. App.) 259 S. W. 987, and cases there cited; Texas & Pacific Ry. Co. v. Gay, 26 S. W. 599, 86 Tex. 571, 608, 25 L. R. A. 52; Edwards v. Dickson, 2 S. W. 718, 66 Tex. 617; Wood on Limitations, § 275, p. 589. But the pleading and the proof may have a different aspect upon another trial, and we therefore merely call attention to the matter without determining it.

We believe the record exhibits a situation wherein "the justice of the case demands another trial," and because of this, in its relation to what has been said above, we recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that the cause be remanded for further trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.