# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 13, 2010

No. 09-40586

Lyle W. Cayce
Clerk

HARTFORD FIRE INSURANCE COMPANY,

Plaintiff–Appellant

v.

CITY OF MONT BELVIEU, TEXAS,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

EDITH H. JONES, Chief Judge:

A performance bond guarantees the timely completion of a construction project for the benefit of the project's owner. The Hartford Fire Insurance Company issued such a bond to a construction company on a project for the City of Mont Belvieu, Texas. When the builder failed to complete punch list items and warranty work, the City sued Hartford for compensation under the bond, and a jury found in favor of the City, awarding nearly $500,000 in damages. Hartford now appeals the district court's denial of its motion for judgment as a matter of law. Because the City's claim was barred by the applicable statute of limitations, and no act of Hartford excuses the City's failure to bring suit within

No. 09-40586

the limitations period, we sustain Hartford's position and reverse and render the judgment.

## I. BACKGROUND

In 1998, Hartford issued a payment bond and a performance bond to Williams Industries, a general contractor, for the construction of the Eagle Pointe public recreational facility in Mont Belvieu. These bonds are required by Texas law for most public work contracts, and their terms are largely defined by statute. TEX. GOV'T CODE § 2253.021 *et seq*. (Vernon 2008).

The construction process was tumultuous, with many delays and change orders occasioned by architectural flaws and mid-course alterations to the plans. As the facility neared completion in mid-2001, the City issued a certificate of occupancy and took possession in May. By July 2002, Eagle Pointe was open and operating.

At that time, however, a number of "punch list" items—repairs and the like—remained incomplete. This was due in part to Williams's financial difficulties. In addition, the company had neglected to pay some of its subcontractors, and they filed payment bond claims with Hartford. Hartford therefore advised the City to "exercise reasonable caution in the payment of any further contract funds to Williams because of Williams' alleged non-payment of subcontractors and suppliers." Hartford feared that Williams would go under, leaving it responsible for the bond claims.

The document at the heart of this case is Change Order 67, executed by the City and Williams on July 2, 2002, to resolve the various disputes between them. Under this agreement, the City paid Williams $674,628.50. That sum covered the expense of changes requested by the City and included an "equitable adjustment," subject to the following terms:

> Whereas the City and Williams Industries have reached an
> agreement to cover the cost of all current and future claims which

2

No. 09-40586

> Williams Industries has or may have.  And whereas Williams Industries and in turn its Bonding Company — The Hartford Fire Insurance Company [—] have agreed that all warranties will remain in force. And also, that Williams Industries will pursue completion of remaining punch list and/or warranty items or compensate the City for expenditures which the City may have to make to achieve the required repairs (with the exception of recently completed repairs at the Wave Pool caisson grates).  The City agrees to pay Williams Industries an additional $214,359.29.

In calculating the total due Williams, Change Order 67 offset against the City's obligation a charge of $231,000 in liquidated damages for Williams's delinquency in completing the project.  To determine this charge, the change order stipulated that, while the contract had mandated completion by February 14, 2001, "[t]he actual completion date was July 19, 2001."  The cover page of the change order described this as the "date of Substantial Completion."

On July 9, 2002, the City forwarded Change Order 67 to Hartford.  Attached were a check for the full $674,628.50, made out to Williams and Hartford jointly, and a cover letter.  The cover letter stated that the City "will continue to look to Williams and ultimately the Hartford for any punch list items and warranty claims that remain unresolved."  Hartford cashed the check and used the proceeds to settle payment bond claims and reimburse its own adjustment costs.

Over the following months, Williams continued to falter, ultimately failing to complete many of the punch list items and warranty repairs that it had agreed to do.  On October 30, 2002, the City sent a letter to Hartford stating as much, and after sending an engineer to assess the situation, Hartford responded in a March 19, 2003, letter by its attorney, James Cupples.  The letter agreed to reimburse the City up to $32,000 to resolve several claims.  For the other claims, it requested additional information from the City and stated that Hartford was "committed to investigate and provide the City its conclusions on the remaining

3

work items." The letter concluded with this statement: "it [Hartford] continues to reserve all of its rights and defenses in this matter and it is without waiver of same."

On June 3, 2003, the City promised in writing to supply more details on its claims and cost documentation, and it did so, in November 2003. According to Hartford, the City's documentation stated claims that were far more extensive, amounting to nearly $500,000, than those the City had identified in 2002. Hartford did not respond to the City's documentation.

The parties' next contact occurred in October 2004, in a letter from the City's attorney to Hartford. It stated:

> The City of Mont Belvieu is concerned about the possible statute of limitations and I am requesting a tolling agreement from you. If there is no agreement reached prior to October 30, 2004, I will be forced to file suit against Hartford for not performing under the bond. Please let me know if you are agreeable to entering into a tolling agreement and how quickly Hartford can process these claims and get them resolved. It has now been nearly two years since the initial claim was made.

Cupple's response was non-responsive. It stated that Hartford was still awaiting documentation on the City's actual expenditures and "stands ready to proceed with the process as soon as we can get the data." No mention was made of the statute of limitations or tolling.

Settlement discussions between the City and Hartford were unsuccessful, and Hartford filed suit in July 2007, seeking a declaration that any claims on the performance bond by the City were barred by the statute of limitations. The City counterclaimed for payment under the performance bond. Hartford moved unsuccessfully for summary judgment, and subsequently for judgment as a matter of law. The district court concluded that the City had raised genuine issues of material fact on two potential defenses to the running of the limitations period: quasi-estoppel and promissory estoppel. The case proceeded to trial, and

the jury found that Hartford had breached its performance bond; Mont Belvieu filed its claim more than one year after final completion of the Eagle Pointe project; this failure was excused by both promissory estoppel and quasi-estoppel; and Mont Belvieu was due damages of $468,492.01. In addition, the district court awarded Mont Belvieu $218,747.65 in attorney's fees and $260,704.62 in prejudgment interest.

Hartford timely appealed.

## II. STANDARD OF REVIEW

When a case has been tried by a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence underlying the jury's verdict. *Streber v. Hunter*, 221 F.3d 701, 721–22 (5th Cir. 2000). Our review of a district court's ruling on a motion for judgment as a matter of law is *de novo*, applying the same standard as used by the district court, and we consider the evidence, draw inferences from it, and resolve credibility determinations in the light most favorable to the non-moving party. *Id*. The motion should be granted only when the facts and inferences are so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. *Id*.

## III. DISCUSSION

Hartford raises several issues on appeal: that the evidence at trial was legally insufficient to support the jury's finding that the City's failure to file its claim within the limitations period was excused by promissory estoppel or quasi-estoppel; that the performance bond expired at the time of substantial completion, ending Hartford's obligation to the City; and that the district court erred in its award of attorney's fees and calculation of prejudgment interest. The City responds that the limitations period never began to run. Because we find

No. 09-40586

against the City on that issue, and in Hartford's favor on promissory estoppel and quasi-estoppel, we need not address the remaining issues.[1]

## A. Statute of Limitations

Before considering the City's defenses to Hartford's argument that its claims are time-barred, we must determine whether those defenses are necessary at all. If Williams never attained final completion of the Eagle Pointe project, as the City asserts, the limitations period never commenced.

Texas law mandates that a "governmental entity that makes a public work contract with a prime contractor shall require the contractor, before beginning the work, to execute to the governmental entity: (1) a performance bond if the contract is in excess of $100,000 . . . ." § 2253.021(a). This bond is "solely for the protection of the state or governmental entity awarding the public work contract." § 2253.021(b). It is also, by statute, subject to a one-year limitations period on claims commencing from "the date of final completion, abandonment, or termination of the public work project." TEX. GOV'T CODE § 2253.078(a).

The City urges that the July 19, 2001, stipulated date of "substantial completion," as used in Change Order 67, is not "final completion" and therefore did not commence the running of the limitations period. Texas case law, however, holds to the contrary. "It has been uniformly held that 'substantial completion' of a construction contract is regarded, in legal parlance, as 'full performance.'" *Transamerica Ins. Co. v. Hous. Auth. of Victoria*, 669 S.W.2d 818, 823 (Tex.App.–Corpus Christi 1984, writ ref'd n.r.e.). Further, "[i]t is well settled that a surety on a performance bond is entitled to rely on the architect's Certificate of Completion as the final discharge of its duty on the bond because

---

[1] Mont Belvieu does not challenge the district court's rejection of its equitable estoppel defense.

No. 09-40586

the architect is the agent and representative of the owner, and his representation is the representation of the owner." *Id.* at 822.[2]

Change Order 67, which set the date of "substantial completion" as July 19, 2001, was signed by the City's architect and its project manager, both agents of the City, several months after the City took occupancy of the facility. The limitations period therefore commenced on that date and concluded one year later, on July 19, 2002, more than five years before the City filed its claim against Hartford. Without some excuse, the City's claims were time-barred.

## B. Promissory Estoppel

Hartford's primary contention on appeal is that the evidence was legally insufficient to support the jury's finding that promissory estoppel or quasi-estoppel excused the City's failure to file suit on its performance bond within the limitations period. We address each defense in turn.

Promissory estoppel serves simply to "estop[] a promisor from denying the enforceability of the promise." *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1966). Under Texas law, promissory estoppel may serve as both a cause of action and, as here, a defense to failure to fulfill a legal obligation. *Rendon v. Roman Catholic Diocese of Amarillo*, 60 S.W.3d 389, 391 (Tex.App.–Amarillo 2001, review denied). The party asserting estoppel must prove four elements: (1) a promise (2) that the promisor should have expected would lead the promisee to some definite and substantial injury, (3) that such an injury occurred, and (4) that injustice that may be remedied only by enforcing the promise. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982) (citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1973).

---

[2] Indeed, quasi-estoppel may bind the City from asserting otherwise due to the benefit it received from its settlement with Williams and, by extension, Hartford. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000).

7

Not every representation, of course, constitutes a promise enforceable by this doctrine; rather, it is a limited exception to broader rules. "As a general rule, the plaintiff has the full statutory period within which to bring suit. Consequently, delay in bringing suit ordinarily does not operate as an estoppel." *Phillips v. Sharpstown Gen. Hosp.*, 664 S.W.2d 162, 168 (Tex.App.–Houston 1983, no writ) (quoting 37 TEX.JUR.2d, *Limitations of Actions*, § 155). This exception, as applied to the timeliness of a claim, therefore encompasses a narrow range of promises and promissory conduct: the "conduct or words undertaken by the prospective defendant must 'amount[ ] to an affirmative inducement to delay bringing the action.'" *Rendon v. Roman Catholic Diocese of Amarillo*, 60 S.W.3d 389, 392 (Tex.App.–Amarillo 2001, writ denied) (quoting *Ladd v. Knowles*, 505 S.W.2d 662, 669 (Tex.Civ.App.–Amarillo 1974, writ ref'd n.r.e.)); *see Dobbs v. Russell*, 347 S.W.2d 796, 797 (Tex.Civ.App.–Fort Worth 1961) (promissory estoppel applicable only to "promises or assurances that [the defendant] will not take advantage of a statute of limitations"), *aff'd*, *Russell v. Dobbs*, 163 Tex. 282, 354 S.W.2d 373 (Tex. 1962). Thus, in *Rendon*, the court rejected the plaintiff's assertion of estoppel as a defense to the statute of limitations for the reason that the representations of the defendant's agent—"that no legal action . . . would be necessary" and that he "would take action to take care of the matter"—were not promises that "comprised inducement to delay initiation of a civil suit." *Rendon,* 60 S.W.3d at 392. Similarly, "the mere exchange of information between potential litigants should not suspend the running of the applicable limitation statute or estop a litigant from asserting it as a defense" because it does not constitute a promise to waive limitations. *Phillips v. Sharpstown Gen. Hosp.*, 664 at 168. Thus, negotiations to settle a claim were not promissory conduct that could establish estoppel. *Id*.

In the present case, the City presented evidence of three representations in support of estoppel: first, the statements in Change Order 67 that "all

warranties will remain in force" and that "Williams Industries will pursue completion of remaining punch list and/or warranty items" or compensate the City for doing so itself; second, Hartford's March 19, 2003, letter offering to reimburse the City for several of its claims and asserting Hartford's right to address warranty issues; and third, Hartford's October 2004 letter stating that it needed additional information and was "ready to proceed with the process."

None of these representations, however, is legally sufficient to excuse the running of the limitations period because none "amount[s] to an affirmative inducement to delay bringing the action." *Rendon*, *supra*. No provision of Change Order 67 speaks to the limitations period, and the statement that warranties would "remain in force" does not purport to alter the substance of those warranties, including their ability to be enforced. The City contends that this clause must serve to extend the limitations period because, otherwise, Hartford's duty on the performance bond would have expired within weeks of it receiving the change order and payment from the City. This argument overlooks, however, Williams's obligations, per the terms of its contract with the City and the Change Order, to complete punch list and warranty items, even after the project reached substantial completion. In addition, Hartford remained liable to suppliers and subcontractors under the terms of the payment bond. TEX. GOV'T CODE § 2254.078(b). Further, this argument ignores the very purpose of Change Order 67, which was to resolve dueling claims between Williams and the City by, *inter alia*, fixing the date of substantial completion and determining the two parties' obligations to each other under their prior agreements. The Change Order does not suggest, in any way, that Hartford's collateral obligations would be altered, but merely that they would remain "in force." Finally, the City's interpretation is weakened by the vagueness of the promise it asserts was made. Does the waiver extend liability to post-completion issues, such as defects to punch list work, unlike the usual performance bond? Did Hartford agree to

waive the limitations defense in perpetuity? If not, when did its waiver expire? That these questions remain open may be dispositive of the matter under Texas law. *Vastine v. Bank of* Dallas, 808 S.W.2d 463, 464 (Tex. 1991) ("Guarantors and sureties are bound only by the precise terms of the contract they have secured . . . "); *Empire Steel Corp. v. Omni Steel Corp.*, 378 S.W.2d 905, 911 (Tex.App.-Fort Worth 1964, writ ref'd n.r.e.) (where doubt and uncertainty exist as to the meaning of a surety agreement, the interpretation favorable to the surety will be adopted). *Cf. Transamerica*, 669 S.W.2d at 822 (The limitations period "may be extended by the existence of an agreement to remedy defects . . . that arise *within a time period* after the final acceptance." (emphasis added)). Estoppel may not be premised on so vague a promise, especially when it is juxtaposed against clear and unambiguous statutory text creating the limitations period. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141–42 (Tex.App.–Houston 1999, review denied); *see* TEX. GOV'T CODE § 2253.078(a).

This vagueness speaks, as well, to the reasonableness of the City's reliance on the promise. Texas courts "have emphasized that 'estoppel requires a *reasonable* or *justified* reliance on the conduct or statement of the person sought to be estopped by the person seeking the benefits of the doctrine.'" *Allied Visa, Inc., 987* S.W.2d at 142 (Tex.App. 1999) (quoting *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 108 (Tex.App.–Dallas 1987, writ ref'd n.r.e.)) (emphasis in original). In *Allied Vista*, the plaintiff relied on a promise by his former employer to supply him with equipment for a new recycling plant. The parties never discussed what items of equipment would be forthcoming or what specific terms, such as pricing and payment, would apply. *Id.* at 140. The appeals court found that the promise was "too vague to support detrimental reliance" and, accordingly, that the plaintiff's reliance "was not reasonable or justified as a matter of law." *Id.* It therefore reversed a jury verdict in favor of the plaintiff.

No. 09-40586

Undermining the reasonableness of any reliance by the City, the purported promise in the present case is even less certain than that in *Allied Vista*. When claiming estoppel as a defense to the running of a limitations period, "[a] plaintiff may not 'blindly rel[y] upon a situation as being what it seemed rather than as being what it in reality was.'" *Dean v. Frank W. Neal & Assocs., Inc.*, 166 S.W.3d 352, 358 (Tex.App.–Fort Worth 2005, no writ) (quoting *Neal v. Pickett*, 280 S.W. 748, 753 (Tex.Comm.App. 1926, jdgmt. adopted)). The City's delay must be "unmixed with any want of diligence on their part." *Id*. The City of Mont Belvieu is a legally sophisticated party and, as a municipality, knowledgeable in Texas's law of public project bonds. If the City relied upon the terms of Change Order 67 to delay filing suit for years after the substantial completion of the Eagle Pointe project, its reliance was neither reasonable nor justified.

Nor are the letters cited by the City availing to it. Initially, neither of these letters evinces a promise by Hartford to relinquish, modify, or otherwise affect the state of limitations; as with Change Order 67, they are too vague to support promissory estoppel. Equally critical, promissory estoppel cannot revive a claim that has already expired at the time of the promise. *Moore*, 492 S.W.2d 934, 936 (estoppel "only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them"); *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 734 (Tex. 1981) ("Estoppel . . . is a defensive theory. It does not create a contract right that does not otherwise exist."). Because the City is unable to establish promissory estoppel with respect to Change Order 67, the limitations period ran well before Hartford's 2003 and 2004 letters. These letters, and any promises they contain, are therefore incapable of reviving the City's claims. To hold otherwise would be to eviscerate the statute of limitations that applies to public project bonds, to the ultimate detriment of Texas municipalities.

11

Viewing the evidence in the light most favorable to the City, it is legally insufficient to establish promissory estoppel.

## C.  Quasi-Estoppel

Under Texas law, quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citations omitted).  Put otherwise, it "forbids a party from accepting the benefits of a transaction or statute and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex.App.–Corpus Christie 1994, writ denied).

Unlike other species of estoppel, quasi-estoppel "requires no showing of misrepresentation or detrimental reliance." *Id*.  It does, however, assume detriment and requires the inconsistency to be a cause of that detriment. *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 136 (Tex.App.–Houston 2000, writ denied) (testimony of the defendant's executive was not a cause of the plaintiff's pre-litigation detriment); *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 367 (Tex.App.–Texarkana 2002, writ denied) (a party "should not be permitted to adopt an inconsistent position and thereby cause loss or injury to the other").  Reliance is therefore relevant where it speaks strongly to causation and unconscionability.  Consequently, where a party asserts quasi-estoppel as an excuse for its failure to file a claim in a timely fashion, unconscionability "necessarily requires a reliance component." *Douglas v. Moody Gardens, Inc.*, No. 14-07-00016-CV, 2007 WL 4442617, *4 (Tex.App.–Houston Dec. 20, 2007, no writ) (unpublished).  In *Douglas*, when an employee failed to file a worker's compensation claim within the applicable time

limit, quasi-estoppel could not lie in her employer's changed position as to whether her injury had occurred within the course of employment. The plaintiff "had her own attorney to advise regarding her rights and responsibilities" under the law, "including the need to timely file a workers' compensation claim." *Id.* She was "not denied recovery for her injury based on Moody's inconsistent positions," but "because she elected not to timely pursue a workers' compensation claim." *Id.* In these circumstances, there was neither causation nor unconscionability.

Similarly, inconsistency can be determined as a matter of law. For instance, "rights expressly secured by contract" ordinarily cannot be "dissolve[d]" by quasi-estoppel because a party may, pursuant to a contract and for legitimate reasons, have the right to assert superficially inconsistent positions at different times. *Neiman-Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 (5th Cir. 1990); *Fasken Land & Minerals, Ltd. v. Occidental Permian Ltd.*, 225 S.W.3d 577, 594 (Tex.App.–El Paso 2005, petition denied) ("We simply fail to see how agreeing to the parties' contract amounts to an inconsistent position with OPL's later assertion of its voting rights under that same contract . . . ."). That party cannot "be equitably charged with choosing to accept benefits in a manner *genuinely inconsistent* with his subsequent claim." *Neiman-Marcus*, 919 F.2d at 371 (emphasis added). In such a case, the party has not acted to "avoid corresponding obligations" but merely to assert its legal rights. *Fasken*, 225 S.W.3d at 593. Were the law otherwise, settlement negotiations would all but compel a finding of liability, and no contract claim could be subject to a limitations period.

Hartford's performance bond incorporated Texas statutory law, which includes a limitations period that runs for one year following completion of the bonded project. After that period, a claim is time-barred. To establish quasi-estoppel as a defense to that bar, a party must show a statement or conduct by

No. 09-40586

the opposing party *prior to the running of the limitations period* waiving its right to assert that bar. The City has made no such showing here. As discussed above, Change Order 67 does not speak to the limitations period or suggest any agreement to waive or extend it. The City presented no other evidence of representations or conduct arguably concerning the limitations period before its natural expiration. The City concedes, in fact, that its next contact with Hartford was its letter of October 30, 2002, complaining of Williams's failure to complete punch list items. That communication, and others made after the limitations period had run, cannot establish an inconsistency regarding Hartford's liability under the performance bond. Hartford's later assertion of its rights created no inconsistency at all, but flowed from Texas law and its contract with Williams.

As a matter of law, the City failed to present legally sufficient evidence to support its defense of quasi-estoppel.

## IV. CONCLUSION

We are exceedingly reluctant to overturn a jury's verdict and will do so only when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for the prevailing party." *Johnson v. Louisiana*, 369 F.3d 826, 830 (5th Cir. 2004). This is such a case. The City's position is simply unsupported by Texas law. The judgment against Hartford is **REVERSED** and **RENDERED**.

14