# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 09-20487

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 20, 2010

Lyle W. Cayce
Clerk

CELANESE CORPORATION,

Plaintiff-Appellant,

v.

MARTIN K EBY CONSTRUCTION COMPANY INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas (Houston Division)

Before JONES, Chief Judge, and HIGGINBOTHAM and ELROD, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

At issue is whether Eby is liable as an "arranger" under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a)(3), and the Texas Solid Waste Disposal Act (SWDA), Tex. Health & Safety Code § 361.344. We hold that Eby is not an arranger, and we AFFIRM the district court's final judgment, denying recovery to Celanese, and we AFFIRM the district court's denial of Celanese's motion to alter that judgment pursuant to Federal Rule of Civil Procedure 59(e).

I.

The parties tried the CERCLA claim to the bench and the SWDA claim to the jury. Under SWDA, litigants are entitled to have a jury act as the fact-finder.

No. 09-20487

*See R.R. Street & Co. Inc. v. Pilgrim Enter., Inc.*, 166 S.W.3d 232, 237 (Tex. 2005). In a CERCLA case, the findings of a jury are only advisory. *See id.* Unless otherwise indicated, the relevant facts regarding the underlying events are taken from the jury's findings and the district court's findings. They are uncontested on appeal.

In 1979, the Coastal Water Authority of Texas (CWA) contracted with Eby to install an underground water pipeline from Clear Lake, Texas to Bayport Marine Terminal in Harris County, Texas. The pipeline was to cross several underground pipelines, including Celanese's methanol pipeline. To accomplish this, Eby first excavated an area to install a pipeline segment, thereby uncovering the pipelines in that area. Eby then ran its own pipeline underneath those pipelines. After installing a segment, Eby backfilled that area and repeated the process with the next segment.

While excavating the area containing Celanese's pipeline, an Eby employee struck and damaged that pipeline with a backhoe. That employee did not know what he had struck, and there was no contemporaneous report of the incident. Neither Eby nor any of its employees knew that the work on the CWA pipeline had damaged the Celanese pipeline.

According to Celanese, "Over the years, the dented areas of the pipe deteriorated in a process known as stress corrosion cracking. Eventually, one of the cracks in the dented area penetrated the wall of the pipe, allowing methanol to leak from the pipe during each methanol transfer." Celanese discovered the leak on October 1, 2002, when someone observed and reported a patch of dead grass at the site. Soon after discovering the leak, Celanese fixed the pipeline. Celanese also worked with state and federal agencies to clean up the site and to

2

No. 09-20487

prevent the contamination of nearby groundwater. As of mid-November 2008, Celanese had removed and disposed of over 232,028 gallons of methanol from the subsurface at the site. The exact amount of released methanol is unknown.

Celanese sued Eby under CERCLA and SWDA to recover its clean-up costs. Liability hinges on whether Eby was an arranger under those statutes. Both the jury and the district court found that "[t]he release at the Site would not have occurred but for the 1979 damage to the Celanese methanol line." The court nonetheless held that Eby was not liable as an arranger under CERCLA or SWDA because Eby did not know that it had damaged the Celanese pipeline and because "Eby is not a person responsible for solid waste under the SWDA." Accordingly, the court entered a take-nothing final judgment on Celanese's claims.

Celanese filed a motion under Rule 59(e) to alter or amend that judgment, which the district court denied. Celanese timely appealed the final judgment and the denial of its Rule 59(e) motion. On appeal, Celanese contends that the common law of negligence, industry custom and practice, and Eby's contract with the CWA "imposed on Eby the obligation to investigate what it hit in a pipeline corridor and rectify any damage." According to Celanese, Eby "consciously disregarded" that obligation by failing to investigate the incident and is therefore liable under CERCLA and SWDA as a matter of law. Celanese does not challenge any factual findings of the district court or the jury.

II.

Because the sole issue here is whether the district court erred as a matter of law regarding arranger liability, our review is *de novo. See Cox v. City of Dallas*, 256 F.3d 281, 288 (5th Cir. 2001) (citation omitted). Although this court

No. 09-20487

generally reviews a decision on a motion to amend or alter the judgment for abuse of discretion, insofar as the decision reconsidered a question of law, our review is *de novo. Elementis Chromium L.P. v. Coastal States Petroleum Co.*, 450 F.3d 607, 610 (5th Cir. 2006) (citations omitted). Such motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued and cannot be used to argue a case under a new legal theory." *Id.* (citation and internal quotation marks omitted).

As a threshold matter, we find that Celanese has waived its conscious-disregard argument. Furthermore, even if the argument were not waived, Eby still would not be liable as an arranger under CERCLA or SWDA because it did not plan or take any intentional steps to release methanol from the Celanese pipeline.

A.

Celanese did not try its case before the district court on a conscious-disregard theory; thus the argument is waived. The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal. *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009). The Joint Pretrial Order and the Verdict Form show that Celanese did not seek a finding on conscious disregard. Rather, as the Joint Pretrial Order demonstrates, Celanese tried this case on an entirely different theory — that Eby had actually known that it had struck and damaged the Celanese pipeline and then attempted to cover it up. Along the same lines, Celanese did not propose any questions to the jury regarding conscious disregard. Instead, the jury questions focus on (1) whether "the Celanese methanol line was damaged as a result of the actions of Eby in 1979," (2) whether "Eby knew that it damaged

4

No. 09-20487

the Celanese methanol line in 1979," and (3) whether Eby "decided to backfill the excavation . . . knowing that the 1979 damage to the Celanese methanol line could result in a leak."[1] For this reason alone, Celanese cannot prevail.

B.

Alternatively, we hold that Celanese's conscious-disregard allegations do not establish arranger liability under CERCLA. Congress enacted CERCLA to address the "serious environmental and health risks posed by industrial pollution," and CERCLA "was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, — U.S. —, 129 S. Ct. 1870, 1874 (2009) (citation omitted). To accomplish this, CERCLA imposes strict liability for environmental contamination upon four broad classes of potentially responsible parties:

> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at

---

[1] The district court ruled on this case prior to the Supreme Court's decision in *Burlington N. & Santa Fe Ry. Co. v. United States*, — U.S. —, 129 S. Ct. 1870, (2009). At the time, the prevailing rule of this circuit for arranger liability required "a nexus" between the defendant's conduct and the disposal of the hazardous substance. *Geraghty & Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 929 (5th Cir. 2001). The district court's ruling — that Celanese must demonstrate that Eby actually knew about the disposal — was based on *Geraghty*. As explained in greater detail below, *Burlington* rejected this lesser standard and held that arranger liability requires an intent to dispose. *See* 129 S. Ct. at 1879-80. Having waived its conscious-disregard argument under *Geraghty*, Celanese has also waived its argument under the more demanding standard of *Burlington*.

any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

42 U.S.C. § 9607(a). This appeal concerns only the third category — whether Eby "arranged for disposal" of methanol, which the parties agree is a "hazardous substance." CERCLA does not specifically define what it means to "arrang[e] for" the disposal of a hazardous substance. Accordingly, we must interpret that phrase according to its ordinary meaning. *Burlington*, 129 S. Ct. at 1879 (citation omitted).

In *Burlington*, the Supreme Court addressed this very question with respect to a chemical supplier that had used common carriers to ship hazardous substances to its customers. *See id.* at 1875. During these shipments, leaks and spills of the chemicals often occurred, which the supplier knew about. *See id.* Because the supplier arranged the deliveries and knew that chemical leaks and spills would occur as a result, the Ninth Circuit held that the supplier was liable as an arranger under CERCLA even though it had not specifically intended to dispose of the product: "Thus, an entity can be an arranger even if it did not intend to dispose of the product. Arranging for a transaction in which there necessarily would be leakage or some other form of disposal of hazardous substances is sufficient." *United States v. Burlington N. & Santa Fe Ry. Co.*, 520 F.3d 918, 949 (9th Cir. 2008), *rev'd*, *Burlington*, 129 S. Ct. 1870.

The Supreme Court reversed this holding because the Ninth Circuit's interpretation of "arranged for" conflicted with the plain language of the statute.

No. 09-20487

*See Burlington*, 129 S. Ct. at 1879-80 ("[CERCLA] liability may not extend beyond the limits of the statute itself."). The Court explained,

> In common parlance, the word "arrange" implies action directed to a specific purpose. *See* Merriam-Webster's Collegiate Dictionary 64 (10th ed.1993) (defining "arrange" as "to make preparations for: plan[;] . . . to bring about an agreement or understanding concerning"); *see also Amcast Indus. Corp.*, 2 F.3d, at 751 (words "'arranged for' . . . imply intentional action"). Consequently, under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance. *See Cello-Foil Prods., Inc.*, 100 F.3d, at 1231 ("[I]t would be error for us not to recognize the indispensable role that state of mind must play in determining whether a party has 'otherwise arranged for disposal . . . of hazardous substances'").

*Id.* at 1879. Accordingly, the Supreme Court held that an entity's knowledge that its action will result in a spill or leak is insufficient, by itself, to establish arranger liability; instead, the entity must "take[] intentional steps" or "plan[] for" the disposal of the hazardous substance. *Id.* at 1879-80. Hence, under *Burlington*, Eby is liable as an arranger only if it took intentional steps or planned to release methanol from the Celanese pipeline.

The record does not support such a finding. The district court found, and Celanese does not dispute, that Eby did not intentionally damage the pipeline. In fact, Eby did not even know that it had struck a pipeline; it only knew that it had struck something with a backhoe. Still, Celanese insists that Eby intentionally took steps to dispose of methanol by disregarding its obligations to investigate the incident and backfilling the excavated area where the incident had occurred. In other words, Celanese argues that Eby's conscious disregard of its duty to investigate is tantamount to intentionally taking steps to dispose of methanol. *Burlington*, however, precludes liability under these circumstances.

7

No. 09-20487

In *Burlington*, the Court declined to impose arranger liability for a defendant with more culpable *mens rea*. The defendant had actually arranged to ship hazardous chemicals under conditions that it knew would result in the spilling of a portion of the hazardous substance by the purchaser or common carrier. *See Burlington*, 129 S. Ct. at 1880. Given that there was no arranger liability under those circumstances, we fail to see how we can impose such liability here when Eby did not even know that it had struck the Celanese pipeline. Therefore, we hold that Eby is not liable as an arranger under CERCLA.

Because we find that Eby is not liable as an arranger under CERCLA, we also find that it is not liable as an arranger under SWDA, the Texas "counter-part" to CERCLA. *R.R. Street & Co. Inc. v. Pilgrim Enter., Inc.*, 166 S.W.3d 232, 238, 241 (Tex. 2005). The Texas Supreme Court has yet to consider SWDA arranger liability in light of *Burlington*. Therefore, we must determine how the Texas Supreme Court would likely resolve the issue post-*Burlington*. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citation omitted). Here, the Texas Supreme Court has explicitly instructed that we should look to"federal case law for guidance in interpreting the term 'otherwise arranged' to dispose of solid waste, which is not defined in either SWDA or CERCLA." *R.R. Street*, 166 S.W.3d at 241. In light of this instruction, which this court must of course heed in making an *Erie* guess, we are confident that the Texas Supreme Court would apply *Burlington* to Celanese's SWDA claim. Accordingly, consistent with our CERCLA analysis above, we also hold that Eby is not liable as an arranger under SWDA.

AFFIRMED.