# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20557

JASON OWENS; TERRY MARIE OWENS,

Plaintiffs–Appellants,

v.

SPECIALIZED LOAN SERVICING, L.L.C.,

Defendant–Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-1254

Before KING, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:[*]

Jason and Terry Marie Owens appeal the district court's grant of summary judgment in favor of Specialized Loan Servicing, LLC ("SLS"). The Owens argue that SLS breached a valid home loan modification agreement (the "Modification Agreement" or "Agreement") and thus should be prevented from foreclosing on their home. SLS argues that the Modification Agreement is

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20557

unenforceable because it was never signed by SLS and Texas law requires all loan agreements over $50,000 to be in writing and signed by the party to be bound. *See* Tex. Bus. & Com. Code Ann. § 26.02(b). Because the Owens have waived the argument that the statute of frauds is satisfied, we AFFIRM.

## I. BACKGROUND

The Owens purchased their home, located in Manvel, Texas, in 2006. They executed a note with an original principal of $219,900 as well as a Deed of Trust in favor of First Consolidated Mortgage Company to secure payment. SLS is the mortgage servicer on the note. The Owens first defaulted on their mortgage in 2012 when they fell behind on monthly payments. In 2013, the Owens sought to modify their mortgage under the Home Affordable Modification Program ("HAMP"). To become eligible for modification, the Owens were required to make reduced trial period payments, which they made in July, August, September, and October 2013. On November 18, 2013, the Owens received a letter from SLS confirming they were eligible for a modification and offering to permanently modify their loan. The letter listed two steps required for acceptance: the applicant needed to (1) sign (or electronically sign) and return the enclosed Modification Agreement by December 31, 2013, and (2) make any remaining trial period payments on time. The Owens electronically signed and returned the Agreement using SLS's electronic "signing room" on December 20, 2013. SLS contends that the Owens' attempt to sign was unsuccessful and the signed document was not received by December 31. It is undisputed that SLS never signed the Agreement.

In January 2014, the Owens attempted to make a modified payment under the Agreement, but that payment was returned on February 7, 2014. According to Jason Owens, they then spoke with an SLS representative who said that the Agreement had not been received by SLS. This representative, Dawn, told them that there had been a "mistake" and that SLS had been

2

experiencing problems with its electronic "signing room." Jason Owens testified that Dawn told them she "was going to try to fix it" and "see what she could do to get that loan back." Dawn accepted payments for January and February over the phone. In March, the Owens tendered another payment to SLS, but SLS did not accept it. SLS sent the Owens a letter on March 19, 2014, explaining that the Agreement was not valid because the offer had not been properly signed and received. SLS reviewed the loan again in January, February, March, and April of 2014 but never offered the Owens another modification. In January 2015, SLS posted the Owens' home for foreclosure.

The Owens filed suit in state court on May 4, 2015, seeking a temporary restraining order ("TRO") and temporary injunction to prevent foreclosure, as well as a declaratory judgment that they are not in default. They asserted breach of contract, fraud/misrepresentation, negligent misrepresentation, and violations of the Texas Debt Collection Act ("TDCA"). The state court granted the TRO on May 4, 2015. On May 11, 2015, SLS removed the case to federal district court. The district court granted summary judgment in favor of SLS on July 28, 2016. The Owens timely appealed. On appeal, they raise only the breach of contract claim, although they have added new arguments for affirmative relief based on promissory estoppel and quasi-estoppel.

## II. STANDARD OF REVIEW AND JURISDICTION

This Court "review[s] a grant of summary judgment de novo, applying the same standard that the district court applied." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper if there is no genuine dispute regarding any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Jurisdiction exists pursuant to 28 U.S.C. § 1332. In SLS's notice of removal, it did not accurately state its citizenship for purposes of diversity jurisdiction. This Court raised this issue sua sponte and requested

No. 16-20557

supplemental briefing from the parties as to citizenship. Thereafter, SLS filed a motion to amend its notice of removal. After reviewing the supplemental briefing, we are persuaded that the parties are diverse, and we take judicial notice of the documents evidencing citizenship. The notice of removal is deemed to have been amended to add the additional allegations of citizenship. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).

## III. DISCUSSION

### A.    Breach of Contract

The Owens argue that SLS breached an enforceable contract. The elements of a breach of contract claim in Texas are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The first element—the existence of a valid contract—is at issue in this case. A valid contract requires "(1) an offer; (2) an acceptance in strict compliance with terms of offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and [6] consideration." *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). According to the Owens, SLS sent them a valid offer on November 18, 2013, which they accepted by making trial payments and signing the Modification Agreement. Although they have not used the term "unilateral contract," the Owens essentially contend that the Modification Agreement was a unilateral contract that they accepted by performance. A unilateral contract "is created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable

4

when the promisee performs." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (internal quotation marks omitted).

"The goal of contract interpretation is to ascertain the parties' true intent as expressed by the plain language they used." *Great Am. Ins. v. Primo*, No. 15-0317, 2017 WL 749870, at *2 (Tex. Feb. 24, 2017). It is not clear, on its face, whether the Modification Agreement was a unilateral or bilateral contract. On the one hand, the terms of the offer suggest that it could be accepted by performance. The offer letter clearly states "How to accept this offer" and lists two requirements: (1) signing and returning the Modification Agreement by December 31, 2013 and (2) making any remaining trial period payments by their due dates. Further, the Modification Agreement states: "If my representations . . . continue to be true in all material respects and all preconditions to the modification . . . have been met, the Loan Documents will automatically become modified." Unlike other loan modification agreements this Court has considered, the contract does not state explicitly that it would not be binding until signed by SLS and returned to the Owens. *See, e.g.*, *Pennington v. HSBC Bank USA*, 493 F. App'x 548, 555 (5th Cir. 2012) (unpublished) (contract stated loan would not be modified unless and until "the Lender accepts this Agreement by signing and returning a copy of it"). Instead, the contractual language indicated that once the Owens performed, their loan would be modified automatically, and SLS would be bound by the Agreement.

On the other hand, the Modification Agreement has a signature line for an SLS representative. This line suggests that the Agreement *did* require a signature from SLS. Given that all parts of a contract should be read "so that none will be rendered meaningless," *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)), SLS may

not have intended to be bound until the Modification Agreement was signed by both parties.

We need not determine whether the Modification Agreement was a unilateral contract, however, or whether the other elements of contract formation were met. The statute of frauds applies regardless. Texas Business and Commerce Code § 26.02(b) provides: "A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." SLS argues that this statute bars enforcement because the Agreement was never signed. Indeed, courts have often found loan modification agreements unenforceable under the statute of frauds. *See, e.g.*, *Gordon v. JP Morgan Chase Bank*, 505 F. App'x 361, 364–65 (5th Cir. 2013) (per curiam); *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732–33 (E.D. Tex. 2011).

It is arguable that the written offer itself, along with the attached Modification Agreement, satisfies the statute of frauds. Most cases involving the statute of frauds involve *oral* agreements; these agreements are easily invalidated because there is no written document verifying their terms. *See, e.g.*, *Williams v. Wells Fargo Bank*, 560 F. App'x 233, 238 (5th Cir. 2014) (per curiam); *Watson*, 814 F. Supp. 2d at 733 ("[A]ny modification of the underlying loan agreement must have been in writing."). Here, the offer and Agreement were in writing. Texas courts have not considered whether a written offer to enter a unilateral contract satisfies § 26.02(b). This is likely because, as discussed above, many loan modification agreements are clearly bilateral— they require the signature of both parties and raise no question as to whether acceptance by performance is possible.

We decline to answer this question because the Owens have not argued that the requirements of the statute of frauds are satisfied. In response to

SLS's motion for summary judgment, the Owens argued that the statute of frauds *does not apply* under these circumstances. Then, conceding that the Modification Agreement was never signed by SLS, the Owens alternatively argued that either promissory estoppel or part performance apply as exceptions. *See Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438–39 (Tex. App.—Dallas 2002, pet. denied) (explaining these two exceptions). Because the Owens never argued that the statute of frauds was satisfied by the written offer and Agreement, this argument is waived. *See Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.").

**B.    Exceptions to the Statute of Frauds**

### 1.  Promissory Estoppel

The Owens argue on appeal that the Modification Agreement should be enforced under the doctrines of promissory estoppel and part performance. When an agreement is otherwise unenforceable under the statute of frauds, promissory estoppel will allow the enforcement of the agreement when: "(1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury." *Breezevale*, 82 S.W.3d at 438 (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)). When asserted as an exception to the statute of frauds, "there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256–57 (5th Cir. 2013) (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied)). The promise to sign a written document is sometimes referred to as an "additional requirement" the plaintiff must prove when promissory

7

estoppel is raised as a defense to the statute of frauds. *E.g.*, *Karapetyan v. JPMorgan Chase Bank, N.A.*, No. 4:10-CV-536, 2012 WL 3308883, at \*5 (E.D. Tex. June 6, 2012). "To show detrimental reliance, the plaintiff must demonstrate that he materially changed his position in reliance on the promise." *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)).

The Owens have not shown that they meet the elements of promissory estoppel. In their response to SLS's motion for summary judgment, the Owens made only a cursory mention of promissory estoppel. They did not argue that they relied to their detriment or changed their position in any way based on a promise that SLS would sign the Agreement. Thus, this argument is waived. *Celanese Corp.*, 620 F.3d at 531.

### 2. Part Performance

"[C]ontracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud." *Breezevale*, 82 S.W.3d at 439. "Virtual fraud" refers to a situation where the "party acting in reliance on the contract has suffered a substantial detriment, for which he has no adequate remedy," and application of the statute of frauds would give the other party "an unearned benefit." *Carmack v. Beltway Dev. Co.*, 701 S.W.2d 37, 40–41 (Tex. App.—Dallas 1985, no writ). "The partial performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'" *Breezevale*, 82 S.W.3d at 439 (quoting *Wiley v. Bertelsen*, 770 S.W.2d 878, 882 (Tex. App.—Texarkana 1989, no writ)). Performance is only unequivocally referable to the agreement when there is no other possible reason for performance. *Id.* at 440 (finding that the plaintiff's actions were not unequivocally referable to an alleged working interest

8

contract because they could have been referable to an already-existing services contract); *see also CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 276 (5th Cir. 2009) (concluding that four months of work by the plaintiff following a bid award was not unequivocally referable to the alleged agreement because the parties had already "contemplated that [the plaintiff] would provide such services prior to the possible entry of [the agreement]").

The Owens argue that their "payments following December 1, 2013 are uniquely referrable [sic] to the existence of an enforceable loan modification." As with the other issues in this case, the Owens' argument on this issue below was minimal. Regardless, we find this argument unconvincing. This Court considered a partial performance argument in connection with a loan modification agreement in *Williams v. Wells Fargo Bank* and found that the plaintiff's "actions in applying for a loan modification, dismissing the bankruptcy filings, and failing to take action to prevent the foreclosure sale [did] not unequivocally corroborate the fact of any alleged oral loan modification contract." 560 F. App'x at 239; *see also Swank v. CitiMortgage, Inc.*, No. A-13-CV-711, 2013 WL 12085110, at *4 (W.D. Tex. Dec. 30, 2013) ("Because acceptance of Plaintiffs' partial payments was consistent with the terms of the original agreement, Plaintiffs have failed to show the unequivocal partial performance necessary to satisfy the exception to the statute of frauds."). Accordingly, the Owens do not meet the requirements for the part performance exception.

## C. Other Causes of Action

The Owens also assert promissory estoppel and quasi-estoppel as causes of action. Promissory estoppel can be asserted as a cause of action in Texas as a way to "estop[] a promisor from denying the enforceability of the promise." *Hartford Fire Ins. v. City of Mont Belvieu*, 611 F.3d 289, 295 (alteration in original) (quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1966)). The

elements are the same as the promissory estoppel exception to the statute of frauds, although the promise does not have be a promise to sign an existing written document. *See id.* The Owens did not allege promissory estoppel as a cause of action in their complaint. Moreover, for the reasons discussed above, the Owens waived their argument on promissory estoppel by not adequately making this argument below. *Celanese Corp.*, 620 F.3d at 531.

Finally, quasi-estoppel is an equitable doctrine that does not require a showing of a false representation or detrimental reliance. *Gil Ramirez Grp. v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015). It "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by that party." *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The Owens make a quasi-estoppel argument for the first time on appeal. Consequently, this argument is also waived. *Celanese Corp.*, 620 F.3d at 531.

## IV. CONCLUSION

Texas law requires loan agreements over $50,000 to be in writing and signed by the party to be bound. Because the Owens have not shown that the statute of frauds requirements are satisfied, we AFFIRM the district court's grant of summary judgment.