# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2022

Lyle W. Cayce
Clerk

No. 20-20633

JUAN CARLOS CISNEROS GUERRERO, *individually and on behalf of others similarly situated*; WILSON FERNANDO ACHACHI SEILEMAN; MIGUEL ANGEL ROMERO GALLARDO; ESBAR ESTALIN PAZ; NORMA GESEL PROANO PAREDES; ET AL.,

*Plaintiffs—Appellants*,

*versus*

OCCIDENTAL PETROLEUM CORPORATION; OCCIDENTAL EXPLORATION AND PRODUCTION COMPANY,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-465

Before HIGGINBOTHAM, WILLETT, and DUNCAN, *Circuit Judges*.
STUART KYLE DUNCAN, *Circuit Judge*:

Ecuadorian law has long required private companies to share profits with employees. So when Ecuador contracted with foreign oil company Occidental to develop an oil-rich region of the rainforest, Occidental paid its Ecuadorian employees a sizable portion of its annual profits. Things went well for several years until the middle of 2006, when the government canceled the exploration contract and expropriated Occidental's property,

No. 20-20633

leading to massive losses. Profits and profit-sharing abruptly ceased. Occidental sought arbitration and, a decade later, received a nearly billion-dollar settlement from Ecuador.

A group of Occidental's former Ecuadorian employees then sued Occidental, claiming the arbitration settlement represented profits they were entitled to share. The district court correctly dismissed the employees' claims. Under the plain terms of Ecuadorian law, a company's profit-sharing obligation depends on the profits lawfully declared in its annual tax returns. Occidental's tax returns for the interrupted year of 2006 showed not profits but losses. As a result, Occidental owes its former employees no shared profits for that year.

We affirm the district court's judgment.

I.

In 1999, Ecuador and its state-run oil company Petroecuador contracted with Occidental Exploration and Production Company[1] ("Occidental") to develop Block 15, an oil-rich region of the rainforest, in exchange for a share of the revenue from 1999 to 2019. Occidental invested in Block 15's infrastructure and operations and employed some 320 Ecuadorian citizens. In May 2006, Occidental sold a portion of its Block 15 interest without authorization. In response, Ecuador abruptly terminated the contract, seized Occidental's Ecuadorian assets, and nationalized Block 15's operations.

Occidental fired all Ecuadorian employees, agreeing to individual severances known as *finiquitos de trabajo*. Among other things, these obligated

---

[1] This is a subsidiary of Occidental Petroleum Corporation. "Occidental" refers interchangeably to both parent and subsidiary, unless otherwise indicated.

Occidental to share with employees its 2006 profits, "if any," as required by Ecuadorian law.[2] Occidental filed an arbitral claim against Ecuador with the International Centre for Settlement of Investment Disputes (ICSID) for breach of a bilateral investment treaty between Ecuador and the United States. Later that year, Occidental reported a "substantial loss" in Ecuador, confirmed by Ecuador's tax agency to be as much as $860 million.

An ICSID panel awarded Occidental $1.7 billion based on its lost profits through the natural end of the contract. The award was reduced on appeal to $1.061 billion. In 2015, Occidental successfully petitioned to confirm and enforce the award in federal court in New York. In lieu of years of installments, Ecuador agreed to settle the matter to the tune of $979 million "net of any . . . taxes" and full indemnity from related claims brought by "any former employee of Occidental." By early 2016, Ecuador had paid Occidental the full $979 million.

Around the same time, a putative class of Occidental's former Ecuadorian employees sued Occidental in federal court, seeking $265 million (15% of the arbitral award) based on Ecuador's profit-sharing laws and the severance agreements. Occidental moved to dismiss the complaint based on Ecuadorian law, *forum non conveniens*, and international comity. After a hearing, the district court denied Occidental's motion but urged re-filing as a motion for summary judgment.

---

[2] Translated from Spanish, the pertinent text provides: "The only matter that shall remain outstanding and unresolved between the parties is the calculation and payment of the legal profit sharing percentage, if any, which may be due during the 2006 fiscal year, which the Employer is obligated to pay in accordance with the law, no later than April 15 of next year." In the original Spanish: "*Únicamente quedaría pendiente de liquidación y pago el porcentaje legal de utilidades que, en caso de haberlas durante el ejercicio económico de 2006, el Empleador se obliga a pagarías de acuerdo con la ley, hasta el 15 de abril del próximo año.*"

No. 20-20633

Occidental did so. The parties submitted tax returns and accounting reports, translations of the relevant Ecuadorian legal authorities, and dueling declarations of Ecuadorian law experts. Four years later, the district court granted Occidental summary judgment. Relying on the company's tax returns, the court concluded Occidental earned no profits in 2006 but instead lost money. It also rejected the employees' argument that the 2015 arbitral award or the 2016 settlement could stand in for 2006 profits under the *finiquito*. Accordingly, the court ruled that the Ecuadorian employees were not entitled to a portion of the arbitral award. The employees appealed.

## II.

Our review of summary judgments and the content of foreign law is *de novo*. *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 713 (5th Cir. 1999).

## III.

Since 1945, Ecuador's Constitution has guaranteed workers the right to share in company profits. *See* Constitución de la República del Ecuador [hereinafter, Constitución] Mar. 6, 1945, art. 148(s).[3] The current provision, Article 328, provides that "persons working in the private sector are entitled to share in the net profits of the companies [they work for], in accordance with statutory legislation." Constitución Oct. 20, 2008, art. 328.[4] Article 97 of Ecuador's Labor Code requires a private employer to "allocate fifteen percent (15%) of its realized profits for the benefit of its

---

[3] "Workers will participate in the profits of the company, in the form and proportion established by law." *Ibid*. In the original Spanish: "*Los trabajadores serán partícipes en las utilidades de las empresas, en la forma y proporción que fije la ley.*" *Ibid*. **ROA.601.**

[4] "*Las personas trabajadores del sector privado tienen derecho a participar de las utilidades de las empresas, de acuerdo con la ley.*" *Ibid*.

employees." CÓD. TRAB. art. 97.[5] In turn, Article 104 provides that "[c]alculation [of profits] shall be conducted on the basis of the declarations or determinations prepared for the payment of Income Tax." CÓD. TRAB. art. 104.[6] In accordance with these provisions, Occidental distributed over $200 million to its Ecuadorian employees from 1999–2005, based on the profits reported on its tax returns for those years.

As noted, though, Occidental's 2006 tax return showed a loss instead of profits, which the district court deemed dispositive. On appeal the employees cry foul, maintaining that tax returns are "not the exclusive mechanism for determining profit-sharing liability." They instead claim the correct metric is Occidental's "actual economic profit" in 2006, which they say is disputed given the 2016 settlement. That approach lacks any principled basis in Ecuadorian law.

According to the employees' expert, this "actual economic profit" theory arises from various "'favorability' and 'pro-worker' principles" throughout Ecuador's constitution and labor code. *See, e.g.*, CÓD. TRAB. art. 7 (ambiguities in the labor code are to be given "the interpretation that is the most favorable to the worker").[7] From this premise, the expert deduces that profit-sharing is an "inalienable and intangible" right, one "not contingent upon certain purely procedural requirements being met." This argument is refuted by the plain terms of Ecuadorian law.

---

[5] "*El empleador o empresa reconocerá en beneficio de sus trabajadores el quince por ciento (15%) de las utilidades líquidas.*" *Ibid.*

[6] "*Para el cálculo [de utilidades] tomarán como base las declaraciones o determinaciones que se realicen para el pago del Impuesto a la Renta.*" *Ibid.*

[7] "*En caso de duda sobre el alcance de las disposiciones legales, reglamentarias o contractuales en material laboral, los funcionarios judiciales y administrativos las aplicarán en el sentido más favorable a los trabajadores.*" *Ibid.*

No. 20-20633

The interpretive principles required by Ecuador's Civil Code do not sound foreign to us. Courts must honor "the literal letter of [the] terms" of statutes "construed in their natural and obvious sense" as informed by "[t]he context of [the] law." Cód. Civ. art. 18.[8] On this point, "the literal letter of the terms" of the Ecuadorian Labor Code could not be plainer. Article 104 provides that, with respect to profit-sharing:

> Calculation [of profits] shall be conducted on the basis of the declarations or determinations prepared for the payment of Income Tax.

Cód. Trab. art. 104. That provision is unambiguous, leaving no room to put any "pro-worker" thumb on the interpretive scale. *See* Cód. Trab. art. 7. The employees point to no other statutory basis for their "actual economic profit" theory, and we have no power to write it into Ecuadorian law.

Lacking statutory support, the employees retreat to a judge-made exception to Article 104. As both sides' experts agree, in the *Cruz* decision Ecuador's National Court of Justice instructed that "nothing would be more unfair than to refuse . . . the payment of profits to the worker, only because they did not appear on the tax declaration that, it has been definitively established, was false." Corte Nacional de Justicia [CNJ] [National Court of Justice], 21 enero 1980, "Cruz c. Chagra Norte Cia. Ltd." Gaceta Judicial Serie XIII, No. 7 p.1448. In the employees' view, the 2016

---

[8] "*1a.- Cuando el sentido de la ley es claro, no se desatenderá su tenor literal, a pretexto de consultar su espíritu. . . . ; 2a.- Las palabras de la ley se entenderán en su sentido natural y obvio, según el uso general de las mismas palabras[.]*" *Ibid. Cf. Sw. Elec. Power Co. v. United States Env't Prot. Agency*, 920 F.3d 999, 1023 (5th Cir. 2019) (relying on, *inter alia*, "text, structure, and the overall statutory scheme" to interpret statutes (cleaned up)); La. Civ. Code art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); La. Civ. Code art. 11 ("The words of a law must be given their generally prevailing meaning.").

No. 20-20633

settlement award retroactively rendered Occidental's 2006 tax returns "false," so they are entitled to circumvent Article 104 and decouple the 2006 profits from the tax returns. But *Cruz* is limited to when *fraud* renders a private employer's tax returns "false." *Ibid.* The employees concededly "do not dispute that [Occidental] filed a tax return in 2006 and did so with no fraudulent intent." The National Court of Justice's fraud exception provides no refuge.[9]

In sum, the *sentido natural y obvio* of Ecuadorian law settles this dispute. Cód. Civ. art. 18. Occidental's former employees may share only in the profits lawfully reported in Occidental's 2006 income taxes. Because those declarations undisputedly attribute no profit to Occidental that year, Occidental owes the employees nothing.

AFFIRMED

---

[9] The employees also propose another uncodified exception to Article 104—when the employer "receives an exemption from reporting profits in its tax documents." *See* Julio César Trujillo V, Derecho Del Trabajo 456 (Ediciones de la Pontificia Universidad Católica del Ecuador ed., 2nd ed. 1986) ("This is not to say that the companies or employers who . . . come under special legal exemptions for payment of income tax, are not obliged to deliver 15% of their profits obtained before taxes."). The employees point to Ecuador's granting Occidental a setoff of "Tax and Labor Amounts" in the settlement agreement. But the employees failed to raise this argument below, so it is forfeited. *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010).